FULLER v. MISSROON.

1. RULE ON PURCHASER—SPECIFIC PERFORMANCE.—Where all the parties to an action for partition join in seeking by rule to compel the purchaser at a sale under an order in the cause, to comply with his bid, and the purchaser resists, the same principles of equity will be applied that govern the court in actions for specific performance.

2. IBID.—IBID.—A purchaser at a sale for partition is entitled to have the title examined and reported upon by the master. If such investigation shows a reasonably clear and marketable title, specific performance will be directed, but if there is a rational doubt of the validity of the title, the court will not compel compliance.

3. CONSTRUCTION OF DEEDS—INTENTION.—In construing deeds, courts are bound to ascertain from the language employed in the deed the intention of the grantor, and then to give effect to such intention, if not repugnant to the law of the land.

4. TRUST DEEDS—FEE.—A grantor in consideration of the regard he had for Mrs. H. and of $5, conveyed in 1829 to a trustee, his heirs and assigns forever, a house and lot of land in trust, to suffer and permit Mrs. H. and her husband for and during their joint lives and, upon the death of either, the survivor to occupy and enjoy said premises, and upon the death of the survivor, then in trust to be absolutely vested in such issue of their present marriage as may be living at the death of the survivor, to be held by them, if more than one, as tenants in common, with power to the trustee, at the request of Mr. and Mrs. H. or the survivor, to sell and dispose of the property and reinvest the proceeds subject to the same trusts. *Held,* that upon the death of Mrs. H., who survived her husband, the issue of their marriage then living

took a fee simple title as tenants in common, according to the intention of the deed.

5. CASE CRITICISED—LIMITATION OF ESTATES.—Bratton *v.* Massey, 15 S. C., 281, approved, and held to be applicable to the facts of this case; and under that decision the beneficiaries in a deed to a trustee, his heirs and assigns, with power of sale, will take the fee without the addition of the word "heirs," in order to effectuate the intention of the grantor.

6. LIMITATION OF ESTATES—POWER OF SALE—WORDS.—The unlimited power of sale contained in the deed and the direction that the property should vest in the issue *absolutely*, disclose an intention that the issue shall take the fee.

7. VALUABLE CONSIDERATION—REVERTER.—The recital in a deed of a consideration of five dollars received estops the grantor and his heirs from claiming a reverter.

8. PROBATE OF DEEDS—RECORDING—PRESUMPTIONS.—Under the law of force in 1829, proof of the execution of a deed for the purpose of recording was to be made by the oath of one witness according to former practice, and from the records of that time it appears that the recording officer did not require the proving witness to sign the probate. Therefore held that an affidavit to a recorded deed not signed by the witness was a proper probate.

9. IRREGULARITIES—HEALING ORDER.—An order of the court confirming a contract for sale made by the master through an agent employed by him and directing a deed to be executed to the purchaser, cured the irregularities of a previous order of sale made at chambers, of the direction for a private sale (which in this case was not improper), of the employment by the master of an agent to sell under the supervision of the attorneys, and of an order of reference prematurely made.

Before NORTON, J., Charleston, March, 1891.

This was a rule on J. H. Heinsohn to show cause why he should not be required to complete his contract to purchase the premises ordered to be sold under decree of the court in the case of Sarah J. Fuller against Anna C. Missroon and others. The decree of the Circuit Judge was as follows:

The following extracts from the deed by Thomas Hanscome to Dr. Thomas Legaré, his heirs and assigns, dated 6th February, 1829, for the premises, the subject of this rule, state the consideration thereof and the trusts therein declared, viz.: "In consideration of the regard I have for Mrs. Ann Holmes, * * * and * * * of five dollars to me * * * in hand paid

by Dr. Thomas Legaré, her trustee," and upon the "trusts to suffer and permit the said Ann Holmes and her husband, for and during their joint lives to occupy and enjoy the said premises, or to receive the income thereof, and upon the death of either of the said parties, viz., Mrs. Ann Holmes or her said husband, then in trust to suffer and permit the survivor to enjoy the income thereof during his or her life, and upon the death of the survivor then in trust to be absolutely vested in such issue of their present marriage as may be living at the death of the survivor aforesaid, to be held by them, if more than one, as tenants in common. * * * And I, the said Thomas Hanscome, do hereby authorize and empower the said Dr. Thomas Legaré, at any time hereafter, at the request of the said Mr. and Mrs. Holmes, or the survivor, in writing to that effect, to sell and dispose of the said property in such way as they may so direct, and to vest the proceeds in any other species of property, to be held, however, subject to the trusts mentioned in this deed."

Mr. and Mrs. Holmes are now dead, and the respondent contracted for the premises at a sale made by order of court in this action for partition among their said issue. He is willing to complete the purchase if he can receive a good title, but suggests that the issue are entitled to no more than estates for their respective lives, with reverter of the fee to Thomas Hanscome or his heirs.

When words of limitation were necessary to convey a fee by will, it was adjudged that a devise in fee to trustees without any specific limitation to *cestui que trust*, the latter takes a beneficial interest in fee. 8 T. R., 597, cited in 2 Chit. Bl., 335, n. 52. "In all cases where an estate is given to one for the use of another in such manner that the statute of uses steps in and executes the estate in *cestui que trust*, the statute executes in the *cestui que trust* only the estate that the first donee or trustee takes, that is, the statute executes or transfers the exact estate given to the trustee." Perry on Trusts, § 312. Numerous cases of our own show that the principles above cited from 8 T. R. and Perry on Trusts, have been frequently adopted by conveyancers, and fee simple rights held under conveyances without words of limitation to the beneficiary without challenge by any

member of the bar representing adverse interests, except in the case of Bratton *v.* Massey, hereinafter discussed, where there was no precedent life estate, and with no exception where there was a precedent beneficial estate expressly for life and a remainder not specifically limited, though in some of the cases the location of the fee was necessarily involved. I note of such cases: *Porcher* v. *Gist*, Rich. Eq. Ca., 209; *Brunson* v. *King*, 2 Hill Ch., 483; *Glover* v. *Adams*, 11 Rich. Eq., 264; *Douglass* v. *McAfee*, 12 *Id.*, 379; *Tutt* v. *P. R. & A. R'y Co.*, 28 S. C., 388; *Kennedy* v. *Badgett*, 19 *Id.*, 591; *Moseley* v. *Hankinson*, 22 *Id.*, 325; *Fields* v. *Watson*, 23 *Id.*, 42; *McCown* v. *King*, *Ibid.*, 232; *Huckabee* v. *Newton*, *Ibid.*, 291; *Wallace* v. *Craig*, 27 *Id.*, 514; *Mellichamp* v. *Mellichamp*, 28 *Id.*, 126; *Snelling* v. *Lamar*, 32 *Id.*, 72.

It may therefore, I think, be safely announced that where there is a conveyance in fee to a trustee without any beneficial interest, without any specific limitation to the beneficiary, the latter takes a beneficial interest in fee, whether the use be or be not executed by the statute; and this proposition is supported by stronger reason and more authorities where the quantity of the estate of a remainderman, after an unexecuted trust specifically limited to another for life, is in issue. Where qualifying words are used, they are to be considered, in order to determine whether the intent to convey a beneficial interest in fee to the beneficiary has been removed.

The beneficial interests given are to Mr. and Mrs. Holmes for life, to the survivor for life, with power to direct a sale, and at the death of the survivor to the issue of the marriage then living. The qualifying words, "to be vested absolutely" and "to be held as tenants in common," so far from removing the grantor's intent that the issue should have a beneficial interest in fee (presumed from the grant of the fee to the trustee and limiting the precedent estate to Mr. and Mrs. Holmes, to their lives and the life of the survivor, then to the issue without specific limitation), are sufficient in themselves to show such intent, if the burden of proof were on them. In 2d Chit. Bl., 104, the great commentator, speaking of the division of freehold estates of inheritance, uses "absolutely" as synonymous with fee "simple." In *Myers*

v. *Anderson* (1 Strob. Eq., 344), there was a gift for life to
Mary Brown and Margaret Brooks, and after their death to be
the absolute property of the issue of their bodies forever, "and
the court held that" by the gift to the issue not only of the pro-
perty or slaves, but of the absolute property in them (a term im-
porting the quantity of interest intended to be given), has as
effectually given them the fee (so to speak), as if the bequest had
been to the issue and their heirs.

In *McLure* v. *Young* (3 Rich. Eq., 559), there was a devise
of land to one for and during the term of her natural life, and at
her death "*absolutely and forever to her lineal descendants*," which
was held, on the authority of Myers v. Anderson, "equivalent to
a devise to them (the lineal descendants) and their heirs." The
court, commenting on Myers v. Anderson, says : "Although that
was a case of personalty, no such distinction is adverted to, and
the language of the court seems too distinct, general, and em-
phatic to admit of any such restricted interpretation." . The words
"to be held as tenants in common" are said in authorities on
English law and some dicta of our court to indicate an intention
to create a new stock of inheritance ; but whether that be true
under the present law of this State or not, they certainly do not
tend to indicate that no fee was intended to be granted.

*Bratton* v. *Massey* (15 S. C., 278), alluded to above as an ex-
ception to the statement that where the fee was granted to the
trustee and no words of limitation used in connection with the
grant to the beneficiary, the grant of a fee to the latter had been
unchallenged, is not in fact an exception, because there were sev-
eral superadded words, from which members of our highest court
drew different inferences as to the intent. That case has never
been overruled, and establishes that where a deed for land is to
the trustee, his heirs and assigns, words of limitation are not
necessary to convey a fee to the beneficiary, but the intent of the
grantor determines whether the fee or only a life estate is given
to the beneficiary, such intent to be arrived at by the language
of the instrument. It also establishes that a consideration will
prevent a reverter to the grantor. There the majority of the
court decided that the words used showed an intent to give the

fee to the beneficiary, contrary to the opinion of the dissenting member.

The case under consideration is stronger, for no language used nor circumstances revealed in the deed shows a contrary intent. The court also decided that there was a valuable consideration in that deed. Here, too, the deed shows the payment by the trustee of five dollars to the grantor, which is sufficient to prevent a reverter. Where the deed is based upon a valuable consideration, however small, even if it be a *pepper corn*, as stated in some of the cases, that fact will be laid hold of by the courts as an evidence of the intention of the parties to carry the whole estate, and it will be usually held to prevent a resulting trust. *Varn* v. *Varn* (32 S. C., 78), cited by respondent, simply passes upon a legal title and has no application here.

Respondent objects to the proof of certain deeds in the chain of title which have been lost, but appear of record with the proof of the execution, the latter having been properly certified by an authorized officer, but not signed by the witness who testifies.

The act of 1785, as amended in 1788, was the recording act of force in 1811 and 1818, when these deeds were recorded, and did not require an affidavit, but only "the oath of one witness before a magistrate out of court, swearing that the deed was duly and legally executed as hereinbefore has been the practice to make proof, shall be sufficient for that purpose" (admission to record). It does not appear that such had not been the practice of making proof; on the contrary, counsel allege at bar that "quantities of deeds are recorded on such probates in Charleston County." That seems to have been the habit in former days. I shall assume therefore that it was the practice of making proofs before 1788.

Respondent's other objections to the title relate to the conduct of this cause, and in so far as they had any force have been removed by subsequent proceedings.[1] Respondent insists that cer-

---

[1] The order of Judge Izlar was as follows:

With the assent of counsel, and also of the guardian *ad litem* of the infant defendants in the cause, it is hereby ordered and decreed, that the said decretal order, granted on 25th October, 1890, and filed on 28th October, 1890, be, and is hereby, in all respects confirmed and made the decree

tain taxes should be paid out of the fund to be paid into court by him, if the title be adjudged good. I have not sufficient information to pass upon this question.

It is adjudged, that the fee simple title to the premises described in the complaint, and bargained for by the respondent, will be conveyed by the deed offered by the master to respondent; that the rule be made absolute, and that the respondent comply with the terms of his bargain within twenty days from notice of the filing of this order, or be attached as for a contempt of the court.

Ordered, that the master ascertain and report what taxes were due and unpaid at the time of said bargain, or have since become due, which ought to be paid by the present owners, and to what rents (if any) respondent is entitled; and that he do retain in his hands one hundred dollars of rents or purchase money until the further order of the court.

J. H. Heinsohn appealed on the several grounds set out in the opinion of this court.

*Messrs. Seigling, Simons & Cappelmann,* for appellant.

*Messrs. A. G. Magrath, H. E. Young,* and *Magrath & Son,* contra.

February 19, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. On the sixth day of February, 1829, Thomas Hanscome, of the city of Charleston, executed his deed, whereby he conveyed unto Dr. Thomas Logan, his heirs and assigns forever, a certain house and lot, situate in Charleston County, upon the following trusts: "To suffer and permit Mrs.

---

of this court, as if herein specially repeated; and, furthermore, that the said sale to John H. Heinsohn be confirmed; the master will tender to said J. H. Heinsohn title to said property, and upon payment of the said sum of two thousand dollars, deliver to him such title, and let him into possession of the premises.      (Signed)      JAS. F. IZLAR,
     January 3rd, 1891.      Presiding Judge.

Under this order was written: "We assent to this order, and that it be heard at chambers." Signed by all the attorneys and the guardian *ad litem.*

Ann Holmes and her husband, for and during their joint lives, to occupy and enjoy said premises, or to receive the income thereof, and upon the death of either of said parties, viz., Mrs. Ann Holmes or her said husband, then in trust to suffer and permit the survivor to enjoy the income thereof during his or her life; and upon the death of the survivor, then in trust, to be absolutely vested in such issue of their present marriage as may be living at the death of the survivor aforesaid, to be held by them, if more than one, as tenants in common; and I, the said Thomas Hanscome, do hereby authorize and empower the said Dr. Thomas Legaré at any time hereafter, at the request of the said Mr. and Mrs. Holmes, or the survivor, in writing to that effect, to sell and dispose of the said property in such way as they may so direct, and to vest the proceeds in any other species of property, to be held, however, subject to the trusts mentioned in the deed." Dr. Legaré, the trustee, was the father of Mrs. Ann Holmes. The consideration mentioned in the deed was regard for Mrs. Holmes, and the sum of five dollars paid by the trustee. This deed was recorded in the office of the register of mesne conveyance for Charleston District on the 16th day of February, 1829, upon the following probate: "State of South Carolina, Charleston County. Personally appeared before me Thomas P. Allen and made oath that he saw Thomas Hanscome sign, seal, and deliver this deed for the purposes therein mentioned, and that he, with Thomas S. Grimke, witnessed the same. Sworn to before me this 16th day of February, 1829. Maurice Simons, jr., notary public."

James W. Holmes died before his wife, Ann Holmes; the latter died in October, 1889. Twelve children were born unto them, ten of whom died unmarried. All of the issue of the said James W. Holmes and Ann Holmes, his wife, in October, 1889, are as follows: Susan J. Fuller, Anna C. Missroon, William B. Holmes, who are grandchildren; Claudia H. Butler, Clelia Porcher Missroon, James Missroon, Edward Nathaniel Fuller, jr., Maud Eola Holmes, and Mabel Warren Holmes, who are great grandchildren; and Rutledge Parker Butler, who is a great great grandchild. Henry E. Young is the owner of the interest of the grandchild, William B. Holmes.

An action was begun in the Court of Common Pleas for Char-

19—35

leston County for partition of the land in controversy amongst the issue of said James W. Holmes and Ann, his wife, by Susan J. Fuller as plaintiff against Anna C. Missroon, William B. Holmes, James A. Holmes, and Henry E. Young as defendants, on the 12th day of March, 1890, and a decree for the sale of the house and lot was made by Judge James F. Izlar at his chambers, in Orangeburg, in this State, on the 22d day of March, 1890, directing a sale of the same to be made by C. R. Miles, Esq., as master. An attempt was made by such officer to sell such house and lot at public auction at $1,800 to H. J. O'Neill. This failed, because it was discovered that all the issue of the marriage of James W. Holmes and Ann, his wife, were not parties to the action. An amended complaint was duly exhibited, and all of the issue were legally made parties. After such had been done, an order for sale was made, by which the master was directed to sell at public outcry the premises in question. To this order, however, was added this provision : "The master is authorized, with the assent of the counsel in the case, to convey the said premises to any person or persons who may pay the sum of eighteen hundred dollars therefor before the day of sale." The master employed James F. Redding to act as his agent in securing such purchaser, and on the 12th day of November, 1890, J. H. Heinsohn, of the city of Charleston, agreed to and with said James F. Redding. as agent, to pay two thousand dollars therefor, to be paid in cash upon the tender to him of good and sufficient title deeds for the same, two weeks being allowed for the examination of the title, all of which was in writing and signed by Mr. Heinsohn. These facts were reported to the court by the master, and a decretal order was passed confirming the sale to Heinsohn upon his compliance with the terms.

On the 7th January, 1891, when the master tendered him a deed of conveyance for the property, he declined to accept the same and comply with his agreement. On the 9th March, 1891, Mr. Miles, as master, reported these facts to the court, and on the same day a rule was issued out of the court against Mr. Heinsohn, requiring him to show cause on the 11th March why he had not complied with his contract of sale and purchase of the premises in question. In the return to the rule, amongst other

things, Mr. Heinsohn agreed to take the premises in question at the price fixed, provided the titles thereto are free from objection, and that such objections should be submitted to the court, waiving any objection to the form of the proceeding, or any other objection, except those relating to the validity of the title; in consideration of which it was agreed by counsel on both sides that no costs by either party to the action should be charged against the other parties to the action, but that each party should pay his own costs. Objections were made to the title by said Heinsohn, and the same were heard and considered by his honor, Judge Norton, who thereafter, to wit, on 7th May, 1891, filed his decree, in which he overruled such objections, and ordered that the rule be made absolute, and that the said Heinsohn should comply with the terms of his bargain within twenty days from notice of the filing of the order, or be attached as for a contempt of the court.

J. H. Heinsohn has appealed from this decretal order of his honor, Judge Norton, upon the following grounds:

I. Because his honor erred in holding the deed of Thomas Hanscome to Thomas Legaré, as trustee, dated 6th February, 1829, to have been made on valuable consideration, the only evidence of its consideration being the statement thereof in the deed.

II. Because his honor erred in holding that by the said deed of Hanscome to Legaré, trustee, the issue of the marriage of Mrs. Ann Holmes and her husband living at the death of the survivor took a fee simple, and in not holding that they took life estates as tenants in common.

III. Because his honor erred in holding that "where there is a conveyance in fee to a trustee without any beneficial interest, without any specific limitation to the beneficiary, the latter takes a beneficial interest in fee, whether the use be or be not executed by the statute; and this proposition is supported by stronger reason and more authorities where the quantity of the estate of a remainderman after an unexecuted trust, specially limited to another for life, is in issue."

IV. Because his honor erred in not holding that under the deed of Hanscome to Legaré, trustee, the estate in the issue of Mr. and Mrs. Holmes, living at the death of the survivor, was a legal

estate; that the word "heirs" is necessary in a deed to make such an estate a fee simple; and that the word "heirs" is wanting in the limitation to the issue in the deed, and, therefore, such issue only take life estates as tenants in common.

V. Because his honor erred in not holding that if the estates limited in the deed of Hanscome to Legaré, trustee, to the issue of Mr. and Mrs. Holmes, living at the death of the survivor, was an equitable estate, the word "heirs" is necessary to make a fee simple in them, and that there are no equivalent word or words expressing a fee simple interest as regards them anywhere in the deed.

VI. Because his honor erred in holding that the deed from Hanscome to Legaré, trustee, and his heirs, and limiting the precedent estate to Mr. and Mrs. Holmes, to their lives and the life of the survivor, and then to the issue without specific limitation, shows intent on the part of the grantor that the issue should have a beneficial interest in fee, and that the power to direct a sale, and the words, "to be vested absolutely," and "to be held as tenants in common," are sufficient in themselves to show such intent.

VII. Because his honor erred in holding that because the deed of Hanscome to Legaré, trustee, showed a payment of five dollars by the trustee to the grantor, this was sufficient to prevent a reverter.

VIII. Because his honor erred in holding that the title to J. H. Heinsohn is a fee simple title, whereas such title is proposed to be made under the decree in this action of Susan J. Fuller, plaintiff, against Anna C. Missroon and others, to which action only the issue of Mrs. Ann Holmes and her husband, James W. Holmes, living at the death of the survivor, and those claiming under such issue, are parties, and such issue claim title under the deed of Hanscome to Legaré, trustee, by the terms of which such issue have only life estates as tenants in common, on the determination of which there is a reverter to Thomas Hanscome, or those entitled under him.

IX. That his honor erred in holding that respondent's objections to the title relating to the conduct of the cause, and in so far as they had any force, have been removed by subsequent proceedings. It was objected on the part of J. H. Heinsohn, that the

order of 25th October, 1890, under which the sale to Heinsohn is claimed to have been made, was granted at chambers by the judge of the First Circuit in Orangeburg, and without the County of Charleston, where the land is situated, and was so made without the consent of the guardian *ad litem* of the infant defendants, of whom there were several, and this has not been cured by any subsequent proceedings in the case.

X. Because his honor erred in holding the title tendered to Mr. Heinsohn to be a good title in fee simple, because the proposed sale was ordered to be made at private sale, and, being a judicial sale, could only have been ordered to be made at public outcry.

XI. Because his honor erred in not holding that J. F. Redding, agent, was without authority to make the sale in question.

XII. Because his honor erred in holding that the deed of C. J. Steedman, sheriff, to Adam Tunno, the original of which cannot be produced, and which was a link in the title, is properly recorded on the affidavit of probate not signed by the witness making it, and in not holding such record bad and no notice, and that a certified copy of such record of deed could not be introduced in evidence.

XIII. Because his honor erred in holding that the deed of Tunno to Thomas Hanscome, the original of which cannot be produced, and which is a link in the chain of title, was properly recorded, the same having been recorded on an affidavit of probate not signed by the witness making it, and in not holding such record bad and no notice, and that certified copy of such record of such deed could not be introduced in evidence.

XIV. Because the original deed of Hanscome to Legaré, trustee, being a link in the chain of title and not produced, and being recorded on an affidavit of probate not signed by the witness making the same, his honor erred in not holding that whilst said deed. by reason of the proceedings in Fuller *v.* Missroon *et al.* is notice to a purchaser thereunder, a certified copy of such record could not be introduced in evidence against any person claiming under Hanscome, or otherwise, and such record is not notice.

XV. Because his honor erred in not holding that the order of reference in Fuller *v.* Missroon *et al.*, under which the title is

proposed to be made, being made before defendants answered, was prematurely made.

The action here to be considered was originally brought for partition of a house and lot amongst certain tenants in common. This court is not called upon to pass upon any question as between such tenants in common as parties to the action, but, on the contrary, so far as this appeal is concerned, all the tenants in common, both plaintiff and defendants, have virtually become plaintiffs in an action for specific performance against J. H. Heinsohn, defendant. It is true that the formal presentation of the questions at issue between the parties is a rule against J. H. Heinsohn, to compel him to complete his contract for the purchase of a house and lot ordered to be sold in the action between the issue of the marriage of James W. Holmes and Ann, his wife, who were living in October, 1889, when the survivor of the said James and Ann died, yet the fact is, that all such issue demand that the said J. H. Heinsohn shall perform his contract in writing, and he alone disputes their right to such relief. We must, therefore, apply the principles of equity to this controversy, just as if it was an action brought by and between such parties for a specific performance of a contract for the purchase of land.

Mr. Adams, in his work on Equity, at page 217, says: "In accordance with the same principle, it is held that when specific performance is asked of a contract for the purchase of real estate, the defendant may have the title examined by a master, so that its validity may be sifted in a way which would not be possible on a mere abstract authenticated as the vendor thinks proper, and that, in consideration of the relief sought beyond the law, he may have an assurance about the nature of his title such as he cannot have elsewhere. If the investigation shows a reasonably clear and marketable title, specific performance will be compelled. But if there be a rational doubt on its validity, the court, though it may be of opinion that the title is good, will not compel the purchaser's acceptance, but will leave the parties to law." Such enunciation of the law governing this class of cases has received the sanction of our own courts. *Butler* v. *O'Hear*, 1 DeSaus., 382. The appellant here has the right to ask the protection of this court in the particu-

lars enumerated by the author whose words were quoted. He presents in his grounds of appeal, that we are now about to consider, the links in the chain of title that he regards defective. We have reproduced such objections at length, but will so group them in their consideration by us, as that they shall lose no vitality thereby, but will be rendered more convenient as to the discussion. First. The construction of the deed from Hanscome to Legaré, trustee. Second. The record of such deed and the deeds as muniments to such title. Third. The objections to the proceedings under which title was tendered to Heinsohn.

First. In construing deeds, courts are bound to ascertain the intention of the grantor and give effect to such intention, unless the same is repugnant to the law of the land. In this connection we quote the very appropriate language of the late Chief Justice Simpson in delivering the opinion of this court in the case of *McCown* v. *King*, 23 S. C., 233: ·"The object of construction as to deeds, in fact, as to all papers in contest before the courts, is to reach the intention of the parties, because it is this that must control; otherwise the contract would be the contract of the court, and not of the parties." To the same effect is the language of the present Chief Justice in delivering the opinion of the court in the case of *Mellichamp* v. *Mellichamp*, 28 S. C., 129.

What, therefore, was the intention of Hanscome as derived from the language employed in this deed? It is very evident that Mrs. Ann Holmes was the first person for whom he desired to provide, for the consideration expressed for the deed is "the regard I have for Mrs. Ann Holmes;" the trustee selected is her father, Thomas Legaré. Hanscome realized that his desire of benefiting Mrs. Holmes could only be exercised by the employment of a trustee to hold the property for her, for at that time the wife could not hold property without danger of its loss because of the marital rights of the husband attaching thereto. Hence the grantor provides her a life estate therein. But he does more, for he gives it into the power of Mrs. Holmes to have the property sold and the proceeds arising from such sale invested "in any other species of property," to be held subject to the trusts enumerated in the deed. The grantor

is not satisfied with this generous provision for Mrs. Ann Holmes, for he looks beyond her life, and provides that the house and lot should vest absolutely in her issue living at the death of the survivor of herself and husband. To effectuate these appropriate objects, he grants the premises in question to Dr. Legaré, "his heirs and assigns forever," upon the foregoing trusts. What estate did the grantor intend for such issue? Was it a life estate, as appellant contends, or was it an estate in fee simple, as is contended by the respondents? We have, as in duty bound, given this matter the best consideration that we could under the circumstances that surround the members of this court, for we have studied their "Case," carefully considered their arguments, and referred to the authorities cited by them respectively. We are constrained to hold that the issue at the death of Mrs. Ann Holmes in October, 1889, took a fee simple title to these premises as tenants in common therein.

We are satisfied that the principles announced and the authorities cited in the opinion of the court in the case of *Bratton* v. *Massey* (15 S. C., 281), are decisive of the matter of the construction of this deed. Briefly, what was there decided? Gilmore had made a deed of certain property to B. H. Massey, his heirs and assigns forever, in trust for the wife of Gilmore, to be used and enjoyed by her as if she were sole and unmarried, with power in her to have her trustee sell any or all of the property, real or personal; such trustee to make titles to such property so sold, and with full power to devise or bequeath the same by will. Mrs. Gilmore died after her husband, not having made a will. Gilmore having died insolvent, his creditors sought to make the property held by the trustee liable to Gilmore's debts, on the ground that by the terms of the deed no provision was made of aught but a life estate to Mrs. Gilmore, and therefore that her heirs could not inherit the same. But the court held that the intention of Gilmore was that his wife should have the fee simple to such property.

The court admitted in that case, that the trusts were not created to Mrs. Gilmore and *her heirs* by words to that effect, and that it was true that in the conveyance of a legal estate the word "heirs" is necessary to create a fee simple. And also, *as a gen-*

*eral proposition,* that Courts of Equity, in construing limitations of trusts, adopt the rules of law applicable to the legal estate (Washburne on Real Property, book 2, ch. III., sec. 2); yet as the same writer, Mr. Washburne, says at page 40 of the same section, that there are some exceptions to such rule, one of which he states as follows : "Another exception is that the word 'heirs' is not always necessary in order to give an equitable estate the character of inheritability, if it requires that such an effect should be given to carry out the clear intention of the party creating it. Thus it is said, if land be given to a man without the word heirs, and a trust be declared of that estate, and it can be satisfied in no other way but by the *cestui que trust* taking an inheritance, it has been construed that a fee passes to him even without the use of the word heirs"—citing the cases of *Villiers* v. *Villiers,* 2 Atk., 71, and *Fisher* v. *Field,* 10 Johns., 505, in both of which cases deeds, not wills, were being construed.   This decision quoted the words of Kent, C. J., in *Fisher* v. *Fields, supra :* "There never was a greater mistake, as I apprehend, than the supposition that this transfer of the soldier's rights to Birch is to be tested by the strict technical rules of a conveyance of land at common law, and that Birch did not take the whole interest of the soldier, because the word 'heirs' was not inserted in the assignment."   Again : "A trustee or *cestui que trust* will take a fee without the word 'heirs' where a less estate will not be sufficient to satisfy the purposes of the trust."   Again : "A trust is merely what a use was before the statute of uses, and the same rules apply to trusts in chancery now which were formerly applied to uses.   And in exercising its jurisdiction over executory trusts, the Court of Chancery is not bound by the technical rules of law, but takes a wider range in favor of the intent of the party."

In the case of *Bratton* v. *Massey* (15 S. C., 281), the court seized upon the almost unlimited power of disposition given to Mrs. Gilmore to deduce the intention of grantor that the estate created by his deed was a fee simple, by, in effect, supplying the word "heirs."   In the case at bar the intention of grantor after the termination of the life estate therein created, to vest the fee in "issue" living at death of survivor is also made manifest by the terms of the instrument—the same

power of sale over the entire premises. In *Bratton* v. *Massey* no words of inheritance were used. In the case at bar, the words "to vest in issue absolutely" are found. It is true in the case of *Mendenhall* v. *Mower* (16 S. C., 303), this court said: "But the word used in this case is the word 'issue.' This, as to real property, is not the apt word of inheritance, and does not *in itself* [italics ours] convey a fee in a deed. . Hence when this word is used in a deed, the question is open *as to the intent of the grantor.*" Fortunately the words "to vest *absolutely*" occurs here. As said by the Circuit Judge, Mr. Blackstone, in book 2, p. 104, in speaking of freehold estates of inheritance, uses "absolutely" as synonymous with "fee simple." In Rapalje and Lawrence's Law Dictionary, in speaking of the owner of the estate in fee simple, it is said he "is the absolute owner of land or other realty." The same dictionary, in speaking of the legal definition of the term "absolute," says the meaning is "complete, final, perfect, unconditional, unrestricted."

But we are not left to this examination without some decisions from our court of last resort. In *Myers* v. *Anderson* (1 Strob. Eq., 344), after the bequest for life, the limitation was to the issue to be their *absolute* property forever; the word absolute carried the fee. Chancellor Johnstone, in delivering the opinion of the court, said: "It appears to the court that the testator in this case by the gift to the issue, not only of the property or slaves, but of the *absolute* property in them (a term importing the *quantity* of *interest* intended to be given), has as effectually given them the fee (so to speak) as if the bequest had been made to the issue and their heirs, and that the gift of the *absolute* property or fee rebuts the idea that he intended," &c. In *McLure* v. *Young* (3 Rich. Eq., 559), the court quotes approvingly the language in the foregoing case and held the words after a life estate "to lineal descendants absolutely and forever" to mean that such descendants took as purchasers. See the effect in this same direction of the case of *Moseley* v. *Hankinson*, 22 S. C., 323.

The use of the $5 paid by trustee to grantor, is in support of this view. While, it is true, the only evidence of this payment is in the recital of the deed itself, yet the only person who could gainsay it would be a creditor of the grantor; it

would certainly bind his heir so as to prevent a reverter. A very slight circumstance in the way of consideration, even if it be "a pepper corn," our own courts declare will be sufficient evidence of the intention of the parties to carry the whole estate.

Thus we have considered the 1, 2, 3, 4, 5, 6, 7, and 8 grounds of appeal. We must dismiss each of these.

Second. It appears from the "Case" that the appellant objected to the deed from Hanscome to Legaré, trustee, because the same was admitted to record when the affidavit, made by one of the attesting witnesses as to its due execution, was not *signed* by such witness, and the same objection was made to the two deeds—the one from Charles J. Steedman, as sheriff, to Adam Tunno, and the other from Adam Tunno to Hanscome— these deeds being muniments of title in the "issue" here being considered, and the appellant sets forth in his grounds of appeal here to be considered, the difficulty as to each of these deeds arising from this circumstance. We do not consider the grounds of appeal well taken. By the act of the general assembly of this State, passed in 1785 (§ 45, 7 Stat., 232), it was provided "and no such deed or conveyance of real estate shall be admitted to record in any County Court unless the same shall be acknowledged in such court by the grantor or grantors thereof in person, or otherwise by proof of the signing, sealing, and delivery thereof, to be made in open court by the oath of two credible witnesses at the least." The act of the general assembly passed in 1788, amending this act, is as follows: Section 1. "That from and after the passing of this act, it shall not be necessary for the grantor or grantors of any deed or conveyance to acknowledge the same in open court, or for the witnesses attesting the same to prove them in open court, for the purpose of their being recorded in the County Courts; but the acknowledgment of the deed by the grantor before a judge of the Supreme Court, or oath of one witness before a magistrate out of court, swearing that the deed was duly and legally executed, *as heretofore has been the practice to make proof*, shall be sufficient for that purpose." 7 Stat., 247.

This was the law governing the recording of deeds in 1829. By these provisions the oath of the witness attesting the execu-

tion of the deed before one qualified to administer such oath was all that was required. And inasmuch as the person charged with the duty of recording such deeds, recorded such deeds without the signature of the witness to the affidavit for that purpose, it would seem to follow, on the assumption of the law that officers are supposed to do their duty until the contrary appears, that such was the prevailing practice, and therefore answers the requirements of the statute. This court has held that a wife in renouncing dower need not herself sign the renunciation, provided the officer whose certificate evidences the renunciation duly signs the same. This decision in no wise infringes upon that rendered by this court in the case of *Woolfolk* v. *Graniteville Manufacturing Company*, 22 S. C., 332. We must overrule, therefore, the 12th, 13th, and 14th grounds of appeal, as before stated.

Third. We come now to the last group of exceptions, embracing the 9th, 10th, and 15th grounds of appeal. Briefly, we hold that the order of Judge Izlar, of the 3rd day of January, 1891, was intended to heal and did heal any previous irregularities in the order of the 25th October, 1890, and that all the parties to this action are bound thereby. We hold that it was competent for the court in this case to pass the order for a sale at private sale under the facts and circumstances of this particular action, and that if there had been any irregularities therein, the decretal orders passed in this action thereafter effectually cured the same. We hold that, under the circumstances of this case, and especially in view of the orders passed herein, James F. Redding, as agent, was competent to represent the master, especially in view of the provision that the attorneys of the parties were required to be consulted and to approve the conduct of the said master and the said agent in the premises. We hold that any supposed irregularities referred to in the 15th ground of appeal were subsequently cured by the orders made thereafter in this action. We therefore overrule these grounds of appeal.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.