## King et al. v. Wurts et al.

(Decided February 8, 1929.)

WAUGH & HOWERTON for appellants.

S. S. WILLIS and EDGAR G. MILLAR for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Ben F. King, Sr., owned a large body of land in Greenup county bordering on the Ohio river opposite the city of Portsmouth, Ohio. He died intestate and a resident of that county on September 21, 1893. He was married, and there was born to him and his wife seven children, some of whom were living at the time of his death, while others had died leaving children surviving. About 15 years before his death, and on August 20, 1878, he executed to two sons, James M. King and Taylor King, a deed conveying to them 300 acres of his land bordering on the Ohio river and providing therein that "James M. King is to have the west side of said land and Taylor King the east side." It was divided between the two grantees as prescribed in the deed to them, but it is only James M. King's portion that is involved in this litigation. The granting clause in the foregoing deed contains this language: "That the party of the first part (the grantor Ben F. King, Sr.) in consideration of the parental love and affection towards his two sons, and that if they should die without children to inherit said land it is to revert back to the estate of Ben F. King, Sr.," etc. The habendum clause was in the usual language and form of an absolute deed. The grantor's wife did not join therein, and on June 15, 1883, he and his wife executed another deed to their son James M. King for the 150 acres he took under the 1878 conveyance and made only by his father, and it conveyed an absolute unincumbered fee-simple title to the grantee, and was executed for the express consideration of $6,000 and "love and affection of their son," the grantee therein, James M. King. The latter thereafter remained in possession of the 150 acres so conveyed to him, but before his death he sold all of it to different parties in small parcels, and his vendees and the vendees of others are the defendants and appellees in this action.

James M. King never married and died without legal issue or descendants, and he survived all of his brothers and sisters. The children and grandchildren of the latter are the plaintiffs, and appellants, in this case. They filed this equity petition in the Greenup circuit court against defendants setting out the above facts, and averred that under the terms of the 1878 deed, supra, they inherited the involved tract of land from Ben F. King, Sr., and which, of course, was upon the theory that he parted with all of his interests in the land by the execution of the 1878

deed, and that he had no interest therein at the time he and his wife executed the 1883 deed, and, consequently, nothing passed thereby. They prayed for judgment so construing the effect of the two writings, and that they be adjudged the owners of the land, and for a recovery of it from defendants. The trial court denied the prayer of the petition and dismissed it, and to reverse that judgment plaintiffs prosecute this appeal.

Learned counsel for plaintiffs advance the argument that the defeasible language employed in the 1878 deed, in the event of the death of either of the grantees therein "without children to inherit" then "said land is to revert back to the estate of Ben F. King, Sr.," was in effect and in law the same as if it had said, "Said land is to revert back to the heirs of Ben F. King, Sr.," and that plaintiffs being his heirs became the owners of it upon the death of James M. King without children to inherit. In other words, counsel contend that the word *estate,* as actually employed in the reverting or defeating clause of the 1878 deed, was intended by the grantor to express and to have the same effect as if the word "heirs" had been employed, and to be construed as a word of purchase, and which, if true, would support their action and their right to recover the land. But we find ourselves unable to agree with that contention. It is conceded by counsel for both sides that the controlling fact in the case is one of the intention of Ben F. King, Sr., in the use of the language he employed to create the defeasance or limitation upon the fee in the 1878 deed, and in which he said that in the contingency of the death of his son, without children to inherit, the "land is to revert back to the estate of Ben F. King, Sr.," and which we construe to be the same in legal effect as if he had said "to revert back to my estate."

The word "estate," as usually and commonly understood, has more than one significance in the law, at least two of which are universally accepted and understood; and they are: (a) The measurement of the quantum of title owned and possessed in property; and (b) the entire amount or body of one's valuable belongings and composing the entire corpus of the property owned by him. Illustrations of significance (a) are absolute or fee-simple titles in property and titles less than that, such as life estates, leasehold estates, etc.; while under significance (b) it is common parlance, and constant reference is made to the sum total of one's property as constituting

his entire *estate*. Clearly the first significance was not the one that Ben F. King, Sr., had in mind when he executed the 1878 deed, since he did not apply the word "estate" to any interest of the vendee in the conveyed land so as to measure the extent of his interest or title, but applied it to an interest or item of his own property and which he designated as a part and parcel of *his* estate. He therefore intended to apply that word with significance (b) supra, i. e., as including and composing a part and parcel of his property and belongings, and to become a portion of *his* estate upon the happening of the contingency provided for in his 1878 deed. We have been cited to no case sustaining the contention of learned counsel for plaintiffs, and we must acknowledge our inability to grasp the line of their argument to the effect that the word "estate," in the defeasance clause of the 1878 deed, is synonymous with and should be given the same interpretation as the word "heirs" as they contend. If that interpretation were true and James M. King had died before Ben F. King, Sr., the fee-simple title to the involved land would have been floating around in the air with no one who could legally claim it, since in that event and under that interpretation the eventual heirs who would take the land at the happening of the contingency would be indeterminate, and we do not understand counsel to dispute the fact that if the supposed case had happened then Ben F. King, Sr., could have legally conveyed the fee under the theory that upon the happening of the prescribed contingency the title of the land returned to and vested in him as a part of his estate. Whether counsel agree to that conclusion or not, we are convinced that it is sound and correct, and, being so, there can be no distinction drawn between the death of Ben F. King, Sr., after that of his son, James M. King, and his death before that of his son. The interpretation should be the same in each case.

Defendants' counsel insist, under their interpretation of some earlier opinions of this court: First, that it was incompetent for the grantor, Ben F. King, Sr., to cut down the fee described in the habendum clause of the 1878 deed to less than an absolute estate in the two vendees therein, and that his attempt to do so by the defeasance clause under consideration was illegal and void; and, secondly, they contend for the interpretation hereinbefore discussed. Their first insistence cannot be sustained, since this court in more recent years has an-

nounced the principle that the intention of one executing a writing, either a deed, contract, or will, is to be gathered from its entire contents from the beginning to the end, and, if the intention so obtained from a writing transmitting title to property, is to place a limitation upon the absolute fee, that intention will prevail. Numerous are the cases to that effect concerning the interpretation of wills, an illustration of which is Fernandez v. Martin, 189 Ky. 438, 225 S. W. 27; and illustrating cases, as applied to deeds, are those of Combs v. Fields, 211 Ky. 842, 278 S. W. 137, and Bowling v. Grace, 219 Ky. 496, 293 S. W. 964. That rule of interpretation has become so firmly fixed and so continuously followed by us that we do not feel called upon to elaborate or discuss it in this opinion and will not incumber it with the further citation of cases in its support. The second insistence of defendants' counsel is not only supported by logic and reason, as applied to fundamental principles of the law, but likewise by the cases of Brill v. Lynn, 207 Ky. 757, 270 S. W. 20, 38 A. L. R. 1109, and Coomes v. Frey, 141 Ky. 740, 133 S. W. 758. We are therefore constrained to hold that the defeasance language in the 1878 deed provided for the contingent returning of some sort of interest to the grantor in that deed.

Considerable discussion is made in briefs for both sides as to the character of that future interest, i. e., whether it was only what is sometimes designated as "a possibility of reverter," or whether it was a "contingent reversion." On the one hand, it is argued by counsel for plaintiffs that if it be conceded (contrary to their contention, as we have herein found to be true) that the future interest provided for in the 1878 deed was one retained or belonging to the grantor therein, and of which he as the owner of his estate would become possessed upon the happening of the contingency, then they insist that, at most, it was only a possibility of reverter and was not the subject-matter of a legal conveyance. See the Brill case, supra. But if that interpretation should be adopted by us as the correct one, then the last-cited case, relied on to sustain it, also held that, although such a remote interest might not be transmittible through a conveyance by the grantor in the deed creating it, yet it was competent for him to release it to the grantee in such deed, and which was done in this case by Ben F. King, Sr., when he executed his 1883 deed. On the other hand, if the contingent interest provided for in the 1878 deed, should be

interpreted as a contingent reversion, then it is conceded that it is such an interest as may be conveyed by the one in whose favor it exists, and that under such interpretation the 1883 deed had the effect to convey it by Ben F. King, Sr., to his son James M. King, and to perfect the title in the land in the latter. So that, whatever view may be the correct one as to the character of interest reserved in Ben F. King, Sr., under the 1878 deed, his subsequent execution of the 1883 deed perfected the title to the land in his son James M. King, and the latter's subsequent conveyances to the various defendants transmitted to them, or their vendors from whom some of the present ones obtain title, a perfect, complete, and absolute title, and the court properly so adjudged.

Wherefore, the judgment is affirmed.