16644

CANNON *ET AL.* v. BALLENGER *ET AL.*
(71 S. E. (2d) 513)

*Messrs. Jesse W. Boyd* and *Wm. Alton Crow,* of Spartan-
burg, *for Appellants,*

40

*Messrs. Whiteside & Smith,* of Spartanburg, and *Ansel M. Hawkins,* of Greer, *for Respondents,* 

July 8, 1952.

OXNER, Justice.

This appeal involves the construction of the following paragraph in the will of Sara Jane Kendrick:

"I give devise and bequeath unto my niece Emma Cannon all my personal property and one half of my Real Estate, she

to have the South side of the plantation, and unto my brother Manning Austin Kendrick the other one-half of my real estate, the North side of said plantation, during his lifetime, and at his death, to his son, I. J. Kendrick, and his bodily heirs, should he die without any heirs, said real estate shall go back to Emma Cannon's Estate."

The real estate mentioned consists of a valuable tract of land in Spartanburg County near the town of Greer. The testatrix, who had no children, died in 1912. Upon her death, Emma Cannon entered into the possession of the south side of the plantation mentioned in the foregoing devise and Manning Austin Kendrick of the north side. Later Manning Austin Kendrick died and thereupon I. J. Kendrick assumed possession of his father's tract. I. J. Kendrick never had any children. He died on July 4, 1928, leaving as his sole heirs-at-law a widow and a number of nieces and nephews. Upon his death, Emma Cannon went into possession of the north side of said plantation under the belief that the title thereto was then vested in her and remained in possession until her death on March 20, 1950. During this period of approximately twenty-two years. she exercised all rights of ownership. She sold several parcels from the north side of said tract of land.

Shortly after the death of Emma Cannon, an action was brought to partition her property among her heirs-at-law and distributees, which resulted in a decree directing the Master for Spartanburg County to sell at public auction the entire tract of land mentioned in the foregoing devise, with the exception of the two parcels previously sold by Emma Cannon. Certain persons who bid in lots cut from the north side of the plantation raised some question as to the validity of the title. Thereafter this action was brought for the purpose of having the will construed and requiring the purchasers at the Master's sale to comply with their bids. All interested persons were made parties. The controversy relates only to the title to the north side of the plantation.

The Master, to whom the case was referred, held that Emma Cannon acquired fee simple title which was now vested in her heirs-at-law, and that the purchasers should be required to comply with their bids. His report was confirmed by the circuit court and this appeal followed.

Neither the Master nor the Circuit Judge passed upon respondents' contention that apart from the controversy relating to the construction of the will, Emma Cannon acquired title by adverse possession. We also find it unnecessary to determine this question.

It seems to be conceded that the devise to "I. J. Kendrick, and his bodily heirs" created a fee conditional estate. Appellants' contentions relate both to the proper construction and the validity of the clause following which provides that "should he die without any-heirs, said real estate shall go back to Emma Cannon's Estate."

The first contention made is that the word "heirs" used in this clause should be construed to mean heirs generally. It is said that since I. J. Kendrick left heirs, the limitation over was ineffective and "the property became intestate property, and descended to Sara Jane Kendrick's heirs under the statute of distributions." We find no merit in this contention. The testatrix must have been aware of the improbability that I. J. Kendrick, who had a wife and a number of nephews and nieces, would die without any heirs. She was clearly undertaking to provide for the contingency of I. J. Kendrick's dying without any "bodily heirs". This conclusion is fully sustained by *Monk v. Geddes,* 159 S. C. 86, 156 S. E. 175.

We likewise find wholly untenable the argument that the word "he" in the executory devise has reference to Manning Austin Kendrick. The phrase "should he die without any heirs" obviously refers to the death of I. J. Kendrick and not to the death of Manning Austin Kendrick without bodily heirs.

The only serious question in the case is the validity of the executory devise "to Emma Cannon's Estate". Appellants argue that "an estate is not a person or entity which can take under a will and such a devise is void", citing *In re Estate of Glass,* 164 Cal. 765, 130 P. 868, 869; *Gardner v. Anderson,* 114 Kan. 778, 227 P. 743 (affirmed on rehearing, 116 Kan. 431, 227 P. 743, 747). They further contend that even if this devise is not void, it lapsed "for the reason that at the time the devise would vest, there was no Emma Cannon Estate in existence to take it." Respondents contend that a decedent's estate is such an entity as to be capable of taking property by will and assert that the two cases relied on by appellants are unsound. They rely largely upon the case of *Leary v. Liberty Trust Co.,* 272 Mass. 1, 171 N. E. 828, 69 A. L. R. 1239.

If a will contains a gift to the "estate" of a person other than testator, there is a sharp difference of opinion as to the validity of such gift. Some courts hold that a gift of this kind is void for uncertainty. Others reach a contrary conclusion. The three cases above mentioned, along with numerous others, are reviewed at length in *Bottomley v. Bottomley,* 134 N. J. Eq. 279, 35 A. (2d) 475. It would serve no useful purpose to discuss this conflict in the authorities because we do not think either line of cases controls the question presented. We do not have before us a devise to the estate of a person deceased. Emma Cannon was living when the testator died and at the time the executory devise became effective. The precise question here is in the devise to her, what is the effect of the superadded word "estate"?

Various meanings have been given by the courts to the word "estate". Much depends on the context. It is defined in 31 C. J. S., Estates, § 1, as follows: " 'Estate' is a term which in its ordinary usage may signify condition in life and may include property, rank, office, income, social position, or character. In legal usage it is of more restricted meaning, ordinarily as indicating the position in which a person stands

with regard to the ownership, possession, and control of his property, or as meaning the property itself." The word should be construed in a sense which will accomplish and not defeat the purpose of the instrument in which it is used. It was stated *In re Sachs' Estate,* Sur., 73 N. Y. S. (2d) 160, 161, that "the word has not been limited to property passing under a will or by intestacy", and that "it is decedent's intention that is controlling, not the legal definition of any word isolated from the text of the will." It is said in *Howard v. Mitchell,* 268 Ky. 429, 105 S. W. (2d) 128, 133: "A man's estate is that which he can sell or dispose of at his pleasure. It is what he can pass on to another." The following definition is found in *West v. Hermann,* 47 Tex. Civ. App. 131, 104 S. W. 428, 432: "The property of a living man. The property of a decedent, which passes to his administrator for the payment of the debts of the community, or in a more general sense, the property of the husband and wife of which the husband dies seised."

. We have encountered much difficulty in determining the meaning that should be given the word "estate" in the instant case. While the question is a close one, we have concluded that the testator intended in the event of the death of I. J. Kendrick without bodily heirs, the north side of the plantation should become the property of Emma·Cannon. The will is inartistically drawn and obviously was not prepared by a skilled draftsman. We think the word "estate" was rather loosely used to signify that upon the contingency named, the north side of the plantation should be added to the property previously given to Emma Cammon.

We have found no case involving a question similar to the one before us. However, *King v. Wurts,* 227 Ky. 705, 13 S. W. (2d) 1043, 1044, tends to sustain the foregoing conclusion. In that case one Ben F. King, Sr., on August 20, 1878, executed to two sons, James M. King and Taylor King, a deed conveying to them three hundred acres of land and providing that "James M. King is to have the west side

of said land and Taylor King the east side." The granting clause contained the following language: "That the party of the first part (the grantor Ben F. King, Sr.) in consideration of the parental love and affection towards his two sons, and that if they should die without children to inherit said land it is to revert back to the estate of Ben F. King, Sr.," etc. The *habendum* clause was in the usual form. James M. King died unmarried and childless. It was contended that the word "estate" as used in the deed was intended to have the same effect as if the word "heirs" had been employed. In overruling this contention, the court said:

"The word 'estate,' as usually and commonly understood, has more than one significance in the law, at least two of which are universally accepted and understood; and they are: (a) The measurement of the quantum of title owned and possessed in property; and (b) the entire amount or body of one's valuable belongings and composing the entire corpus of the property owned by him. * * * Clearly the first significance was not the one that Ben F. King, Sr., had in mind when he executed the 1878 deed, * * *. He therefore intended to apply that word with significance (b) *supra, i. e.,* as including and composing a part and parcel of his property and belongings, and to become a portion of *his* estate upon the happening of the contingency provided for in his 1878 deed. We have been cited to no case sustaining the contention of learned counsel for plaintiffs, and we must acknowledge our inability to grasp the line of their argument to the effect that the word 'estate,' in the defeasance clause of the 1878 deed, is synonymous with and should be given the same interpretation as the word 'heirs' as they contend. If that interpretation were true and James M. King had died before Ben F. King, Sr., the fee-simple title to the involved land would have been floating around in the air with no one who could legally claim it, since in that event and under that interpretation the eventual *heirs* who would take the land at the happening of the contingency would be indeterminate, and we do not understand

counsel to dispute the fact that if the supposed case had happened then Ben F. King, Sr., could have legally conveyed the fee under the theory that upon the happening of the prescribed contingency the title of the land returned to and vested in him as a part of his estate. Whether counsel agree to that conclusion or not, we are convinced that it is sound and correct, and, being so, there can be no distinction drawn between the death of. Ben F. King, Sr., after that of his son, James M. King, and his death before that of his son. The interpretation should be the same in each case."

All exceptions are overruled and the order appealed from affirmed.

BAKER, C. J. and FISHBURNE, STUKES and TAYLOR, JJ.; concur.