HEARD NOVEMBER TERM, 1874.

## LESESNE *vs.* WITTE.

A devise, in these words, "I devise all my estate to my beloved wife, feeling entire
confidence that she will use it judiciously for the benefit of herself and our
children," confers upon the wife an estate in severalty, in fee, without trust or
limitation over.

The tendency of the modern authorities is not to raise trust out of terms merely
expressive of a wish, entreaty, confidence or recommendation.

An action for specific performance addresses itself to the sound discretion of the
Court.

In such cases time is not generally considered as of the essence of the contract.

Either party is entitled, as matter of right, to an order of reference upon the title.

If a plaintiff is able, at the time of the decree, to remove objections to the title, he
should be allowed to do so.

Where the objection to the title is an incumbrance, as, for instance, a mortgage, an
offer to extinguish it with purchase money, to be paid, by the terms of the con-
tract, when the conveyance is executed, is a reasonable one, and should not be
rejected.

Where more than a year had elapsed since the death of a devisor, and the executrix
had duly advertised for creditors, an objection to the title of the devisee, that there
might be creditors who had not presented their claims, cannot prevail.

BEFORE GRAHAM, J., AT CHARLESTON, JUNE TERM, 1874.

This was an action by Sarah L. Lesesne against Charles O.
Witte, for specific performance of a contract for the sale of a lot
of land in the city of Charleston.

By an order of the Court, dated January 31, 1874, it was re-
ferred to a Referee to take testimony, and from his report, dated
June 3, 1874, it appeared that D. Lesesne, formerly a merchant of
the city of Charleston, departed this life on the 10th February,
1871.

By his last will he devised and bequeathed as follows:

"I, Daniel Lesesne, of. Charleston, make my last will and testa-
ment in manner following, that is to say: I give, devise, and
bequeath all my estate, real and personal, of what nature or kind
soever, that I may have the right to dispose of at the time of my
death, to my beloved wife, Sarah Lewis Lesesne, feeling entire con-
fidence that she will use it judiciously for the benefit of herself and
our children; and I appoint my said wife executrix of this my last
will and testament."

This will was admitted to probate, before the Judge of Probate
for Charleston County, on the 15th February, 1871; and, on the
same day, the plaintiff qualified as executrix thereon.

Soon after qualifying, the executrix published the notice required .

by law, calling upon all persons having demands against the estate of the testator to present attested statements thereof. No claims were proved against the estate, either within the time prescribed by law or subsequently.

At the time of his death the testator was seized in fee of the premises hereinafter mentioned, and on the first of March, 1873, at Charleston, the plaintiff, through Lowndes & Grimball, her agents, entered into an agreement, in writing, with the defendant, Charles O. Witte, as follows, that is to say :

"Memorandum of agreement made and concluded this first day of March, 1873, by and between Lowndes & Grimball, agents of the estate of Daniel Lesesne, of the first part, and C. O. Witte, of the second part: For and in consideration of the sum of six thousand dollars, to be paid in manner hereinafter described, Lowndes & Grimball, agents estate Daniel Lesesne, agree to sell to C. O. Witte all that lot of land, with the buildings thereon, on the west side of East Bay, known as No.          , to be paid as follows: one-third cash, balance in one and two years, with interest from date, payable annually, secured by bond and mortgage of the property sold—purchaser to pay twenty-five dollars for papers.

"C. O. Witte agrees to purchase above described property, on the terms and conditions above written, from Lowndes & Grimball, agents estate Daniel Lesesne, and to pay for the same when clear and unencumbered titles are given.

"Witness our hands and seals, 1st March, 1873.
                              "CHARLES O. WITTE,
                              "LOWNDES & GRIMBALL."

On the 29th of April, 1873, the plaintiff, in pursuance of the agreement, tendered to the defendant's attorney a deed of conveyance of the lot in question, and, at the same time, offered to satisfy, with the proceeds of the sale, the only incumbrance upon the premises, namely, a mortgage to the late J. W. Gray, Master in Equity, given to secure the purchase money for the same, and assigned by the Master in Equity to Octavus Cohen, and the executor of Leon J. Herckenwrath, deceased, out of the purchase money.

A release of all their claim in the premises was endorsed on the deed by C. T. Lowndes, Brown Manning, Edwd. L. Wells, Henry D. Lesesne and James R. Pringle, and it was accompanied by an affidavit of executrix, to the effect that the executrix had adver-

tised for creditors; that none had appeared; that she knew that the persons above named, who had released their interest in the premises, were creditors, but was sure that there were not any others, except the mortgage creditors already referred to. On this mortgage there was due, on the first of March, 1873, according to statement furnished the Referee, the following amounts, to wit:

| | |
|---|---|
| D. E. Huger, trustee........................................ | $1,226 56 |
| To the estate of Herckenwrath........................ | 1,836 73 |
| · Total............................................. | $3,063 29 |

By letter, dated April 30, 1873, the conveyance thus tendered was rejected by Mr. Witte's attorney, upon the ground that the title was not "clear and unencumbered." Lesesne & Miles, on the 17th May, 1873, by a letter of that date, proposed to the defendant, Witte, to extinguish the mortgage on the property, if he would then accept the conveyance, and settle for his purchase.

On the 19th the defendant replied that when his attorney had reported to him that the titles to the East Bay property were not good, he had at once requested Lowndes & Grimball to cancel the agreement of sale, stating that he could not allow a matter of that kind to stand open, as he wished to make use of his funds, and would have to look for other investments, with all of which Mr. Lowndes had coincided; that he, accordingly, did make other investments, and had no further use for the East Bay property.

On the 16th June, 1873, Lesesne & Miles, by letter of that date, notified the defendant that they were instructed to appeal to the Court, and the complaint was filed on the 23d June, 1873.

On the first of August, 1873, an agreement was entered into between the plaintiff and defendant, by which it was stipulated that the plaintiff might collect and receive the rent accrued since the date of the agreement to purchase, and to accrue on the house and lot, and might return the same for taxation, and pay the taxes and insurance thereon without prejudice—the rent collected by the plaintiff to be duly credited on the purchase money of the premises, and the taxes and insurance paid by her to be added thereto, in case the judgment in the cause should be against the defendant.

The case was heard upon the pleadings and the evidence, as reported by the Referee.

After the hearing, and before the decree was filed, the plaintiff moved for leave to pay into Court a sum of money sufficient to satisfy the mortgage debt. The motion was refused.

On the 30th June, 1874, His Honor filed his decree, whereby he dismissed the complaint with costs, on the ground that the plaintiff had not tendered a clear and unencumbered title to the land.

The plaintiff appealed, on the grounds:

1. Because the plaintiff's tender to the defendant of a conveyance, accompanied by the offer to satisfy the only encumbrance on the property sold, out of the purchase money, was a sufficient compliance with her agreement with defendant; and the defendant having refused to accept, the plaintiff was entitled to a decree for specific performance of the agreement.

2. Because the plaintiff, having made the offer to defendant, to satisfy the only mortgage on the property, before requiring payment of the purchase money, if defendant would then accept the title, and defendant having refused to accept, the plaintiff was entitled to a decree for specific performance.

3. Because the plaintiff, before the decree was made, having offered to pay into Court an amount sufficient to pay the mortgage debt, was entitled to a decree for a specific performance of the agreement to purchase, according to the uniform practice of a Court of Equity, to allow encumbrances to be removed at any time before the decree.

4. Because plaintiff was entitled to the judgment of the Court, upon the several other grounds of objection to the title made in defendant's answer, and to the further decree, that the purchase money be paid by defendant to the Referee, or the Clerk of the Court, to be applied to the payment of the mortgage debt, or to a conditional decree, that the defendant comply with the terms of sale, upon the plaintiff's procuring and delivering to him a satisfaction of the mortgage.

*Lesesne & Miles*, for appellant:

1. The plaintiff having offered to pay off the one encumbrance on the property, either out of the purchase money or in advance, was entitled to a decree for specific performance.

A Court of Equity looks to the *substance* of the contract, and will enforce it according to the real intention of the parties, and

will grant relief to the party acting in good faith, in the spirit of the contract. It is not required that the party seeking specific performance should have performed the contract according to the very letter, as is required in an action at law for damages.—2 Story Eq. Jur., § 775.

"A Court of Equity frequently decrees specific performance where the action at law has been lost by the default of the very party seeking the specific performance, if it be, notwithstanding, conscientious that the agreement should be performed; as in cases where the terms of the agreement have not been strictly performed on the part of the person seeking the specific performance, and to sustain an action at law, performance must be averred according to the very terms of the contract." The Courts, in all cases of contracts for estates in land, have been in the habit of relieving, where the party, from his own neglect, had suffered a lapse of time, and from that or other circumstances could not maintain an action to recover damages at law. And even where nothing exists to prevent his suing at law, so many things are necessary to enable him to recover at law, that the formalities alone render it very inconvenient and hazardous so to proceed; nor could, in many cases, the legal remedy be adequate to the demands of justice. Courts of Equity have, therefore, enforced contracts specifically, where no action at law could be maintained, for at law the party plaintiff must have strictly performed his part, and the inconvenience of insisting on that in all cases was sufficient to require the interference of Courts of Equity. They dispense with that which would make compliance with what the law requires oppressive; and, in various cases of such contracts, they are in the habit of relieving the man who has acted fairly though negligently." * *—Lord Redesdale, quoted in case of *Mechanics' Bank of Alexandria* vs. *Lynn,* 1 Peters, 376; 2 Story's Eq., § 775, note 4.

The duty of Courts of Equity " is to examine the contract, not merely as a Court of law does, to ascertain what the parties have in terms expressed to be the contract, but what is in truth the real intention of the parties, and to carry that into effect."—Baron Alderson, in *Hipwell* vs. *Knight,* 1 Y. & Coll, 415; Story's Eq., § 776, note 1.

2. The plaintiff was entitled to a conditional decree, that the defendant comply with the terms of sale, upon the plaintiff's procuring and delivering to him a satisfaction of the mortgage.—

*Church of Macon* vs. *Wiley*, 2 Hill Ch., 584; *Merchants' Bank* vs. *Thompson et al.*, 55 N. Y., 7.

3. If the Judge was of opinion that plaintiff had not previously complied with her agreement, he should have allowed her to pay into Court the amount necessary for the satisfaction of said mortgage, to be so applied by the Clerk; according to the uniform custom of a Court of Equity, to allow encumbrances to be removed, and imperfections in the title cured at any time before the decree; and even to allow time to the vendor to remove encumbrances or complete his title.—Story's Eq., § 777; 2 Daniel's Ch. Practice, 1195, 1458, note on p. 1195; *Thompson* vs. *Dulles*, 5 Rich. Eq., 217.

It is sufficient if the person entering into articles to sell has a good title at the time of the decree.—*Langford* vs. *Pitt*, 2 P. Wms., 630: *Merchants' Bank* vs. *Thompson et al.*, 55 N. Y. R., 7.

" Where the Master reported that a good title could be made, except as to so much as a widow was entitled to, in respect of her dower, she refusing to join in the conveyance to the purchaser, upon further directions, the Vice Chancellor held that if, at the hearing, on further directions, the vendor was prepared to cure the objection to the title which was reported by the Master, he was in time to do so; and he accordingly, in this case, decreed a specific performance, upon an affidavit that the widow agreed to join in the conveyance, and that the seller undertook to procure her to join in such conveyance."—1 Sugd. on Vend., 478, citing *Paton* vs. *Rogers*, 6 Madd., 256.

Under a reference upon the title, " it has been held that if the purchaser can show a good title, at any time before the Master's report, it will entitle him to a decree; and even after the report, if the vendor can satisfy the Court that he can make a good title, by clearing up the objections reported by the Master, the Court will make a decree in his favor."—2 Danl. Ch. Pr., 1195.

*Phillips*, contra:

When a title is defective, on the ground of possible claims or encumbrances, which may or may not spring up at some future period, the vendee cannot, in general, compel the vendor to give an indemnity against them.—Lord Eldon, in *Paton* vs. *Brebner*, 1 Bligh., 67, § 67. That in a suit for the specific performance of a contract, if it turns out that the defendant cannot make a title to

that which he has agreed to convey, the Court will not compel him to convey something less with indemnity against the risk of eviction. The purchaser is left to seek his remedy at law, in damages for the breach of the agreement.—Atkinson on Titles, 261.

And in note O, the same authority, under Sec. 11, Seller's Title, it is laid down that the rules on this subject, with regard to lands are, first, that the buyer has an absolute right to a good title, and unless he have unequivocally discharged this right, he is not bound to take a defective title with warrandice, or wait till his right is challenged.

A purchaser, unless he stipulates for less, must have a good title to the land bought, or the plaintiff must have tendered to him a good and sufficient title to it, before he will be compelled to pay for it. This is sheer justice; it is only demanding the *quid pro quo.* The mortgage was one which always, until removed, made the title defective. But it is said the purchaser was told of the mortgage, and the sale was made to pay it. It was the business of the vendor to disencumber his title, and make it good and perfect to the purchaser. If this be not his business, then a purchaser would be bound to take an encumbered title, and go into equity to compel the vendor to clear off the encumbrance.—2 Rich., 363, *Tharin* vs. *Fickling.*

Though in England the rule is, that the vendee shall prepare and tender the conveyance, with us it seems it is the duty of the vendor to make and tender the conveyance, as well as to remove all encumbrances.—6 Rich. Eq., 324–332, *Prothro* vs. *Smith.*

The Court will not compel the specific performance of an agreement, and defendant to accept a title which complainant cannot make out clearly good, and free from encumbrance.—1 DeS., 382, *Butler* vs. *O'Hear.*

In the case of *Wilde* vs. *Fort,* 4 Taunt., 334, the rule is recognized, if the vendor of an estate at auction does not show a clear title by the day specified, the purchaser may recover back the deposit and rescind the contract, without waiting to see whether the vendor may ultimately be able to establish a good title or not. The purchaser is not bound to accept a doubtful title.—1 Pet., 467, *Bank of Columbia* vs. *Hayner.*

On bills for specific performance of contracts concerning lands— and the present case is of this character—Courts of Equity do not force the purchaser to take anything but a good title, and do not

compel them to buy lawsuits. Courts of law consider a title only in matters of fact, but Courts of Equity, in deference to the law Courts, consider a title as doubtful in law, as well as in fact, where the law is not settled. We consider the plaintiff's title as at least doubtful.—8 Rich. Eq., 247, *Lowry* vs. *Muldrow*; and 1 DeS., 213, *Colcock* vs. *Butler*.

Second ground : The estate is not now settled.

The devisee cannot take until the creditors are satisfied. An executor, who is also the residuary legatee, will be treated as the owner of the assets, after due provision is made for securing the payment of the debts due from the estate.—Redfield Law of Wills, 1 pt. 120, § 6.

No final discharge to executor to be granted, without public notice to be given, for the space at least of one month.—Re. Code of S. C., 175, Acts 1869.

If assets are insufficient to pay debts, real estate to be sold.— Acts 1842, 232, Rev. Code of S. C., 420.

Third ground : It is an estate in trust.

It has been established, by a series of cases, that where a bequest is accompanied by words expressing a command, recommendation, entreaty, wish or hope, on the part of the testator, that the donee will dispose of the property in favor of another, a trust will be created—1st. If the words are sufficiently imperative ; 2d. If the subject be sufficiently certain ; and if the object be also sufficiently certain.

1. Thus the words desire, will and desire, request, wish and request, entreat, recommend, hope, in the fullest confidence, not doubting, trusting, and wholly confiding, have been considered sufficient to raise a trust where the two other requisites, viz, certainty of the object and the subject are also complied with.—Hill on Trustees, 71.

2. For this purpose the property to which the trust is intended to apply must be clearly described.—*Id.* 73.

3. And as to the persons, it is by no means indispensably necessary that they should be mentioned by name.—*Id.* § 75. In *Woods* vs. *Woods*, it was held by Lord Cottenham that a gift to a wife, for the support of herself and family, was a good bequest in favor of the children, whom his Lordship decided to be entitled under that description. Upon examination of the several authorities, therefore, it seems to be clear that a direct gift to or for the benefit of a family or families is a sufficient description of the objects, and, ac-

cording to the circumstances of the property, the next of kin or the children will be held to take.—*Id.* 77.

A frequent case of implied trust arises where a testator uses words precatory, or recommending, or expressing a belief. Thus if he desire, will, request, will and desire, wish and request, entreat, most heartily beseech, order and direct, authorize and empower, recommend, hope, do not doubt, have the fullest confidence.—Len. Law Trus. and Trustees, 167. But such a construction will not, in general, prevail where either the objects intended to be benefitted are imperfectly described, or the amount of the property to which the trust should attach is not sufficiently defined; but although vagueness in the object will furnish reason for holding no trust was intended, this may be countervailed by other considerations.—*Id.* 169.

The rule, as laid down by Ld. Alvanly, and since recognized as the correct principle, was this: "Whenever a testator points out the objects, the property and the way in which it shall go, that creates a trust, unless there are plain express words or necessary implication that he does not mean to take away the discretion, but leaves it to be defeated."—2 Ves., Jr., *Malim* vs. *Height.* Where a testator expresses a desire as to the disposition of property, and the objects to which he refers are certain, the desire so expressed amounts to a command.—2 Scho. and Lef., 189, *Cary* vs. *Cary.*

Devise to A. and her heirs forever, in the fullest confidence that after her decease she will devise the property to my family. A. has an estate for life only, with remainder in trust for the devisor's heirs, as *persona designata.*—17 Ves., Jr., 253, *Wright* vs. *Atkins*; *Id.* 19, 299.

Three things are said to be indispensable to constitute a valid trust: First, sufficient words to raise it; secondly, a definite subject; and, thirdly, a certain or ascertained object.—2 Sto. Eq. Jur., 247, § 964.

A great deal of discussion has arisen in the Courts of Equity, in regard to the force of words of recommendation in wills in regard to the use to which the testators might desire the persons to whom they had given legacies to put the same, and how far merely precatory words, or words of wish or desire, would have the effect to create an obligatory trust. But it seems to have been adopted as a rule of the Courts of Equity, at one time certainly, that no particular form of expression is requisite in order to create a binding and valid trust; and that words of recommendation, request, en-

treaty, wish or expectation will impose a binding duty upon devisee, by way of trust, provided the testator has pointed out, with sufficient clearness and certainty, both the subject-matter and the object of the trust.—Red. Law of Wills, 1, 689–700, § 6.

One who purchases from a trustee, with notice of the trust, becomes himself chargeable with the equities of the trust, to the extent of his dealing, is the trustee's act, is a violation or an abuse of the trust. In this case the bank had notice, for the trust was unmistakably stamped upon the face of the certificate, and if they had followed up the indications thereby afforded, it would have led to the most complete information on the subject, and shown them the utter incapacity of Laurens to sell, much less to hypothecate for his own use the certificates of stocks which stood in his name, for the benefit of the wards of the Court.—*Simons* vs. *Bank*, 5 Rich. Eq., 272.

Time is not usually of the essence of a contract, so as to avoid it, in case the exact time be not complied with; but it may be, and is, of the essence, where the other party or third persons may be seriously injured, or even exposed to injury.—Bail. Eq., 373, *Doar* vs. *Gibbes*.

It is well settled in this State that a Court of Equity will not disregard time and decree a specific performance of a contract for the sale of real estate, at the suit of the party in default, unless he not only applies promptly, but has a reasonable excuse for his non-performance on the contract day.—58 Bar., 498, *Hubbell* vs. *Schaning*.


Jan. 16, 1875.   The opinion of the Court was delivered by

Moses, C. J.   However far the earlier decisions may have gone in construing as a trust the mere expression of a wish, entreaty or confidence, attached to a devise or legacy, the inclination of the Courts in more modern times, as Mr. Story, in the second volume of his Equity Jurisprudence, § 1069, says, "is not to extend this doctrine of recommendatory trusts." Mr. Jarman, in his work on Wills, Vol. 1, 329, expresses himself to the like effect.

Though the language used may convey the wish or desire of the testator, as to the use of the property devised, if it does not impose an obligation which can be enforced in a Court of Equity, it cannot be held to control or qualify the absolute interest which is con-

ferred by the previous disposition. Where an absolute right is given, words which are to annex a limitation to its free and uncontrollable exercise must not only be mandatory, but, in themselves, show the manner in which they are to operate, so that the purpose of the testator may clearly appear—how or in what degree he intended to affect the original gift by restrictions entirely inconsistent with its independent enjoyment.

A mere general expression of affection and favor, even in regard to the children of a testator, has never been held, where, by his will, the estate in unrestricted terms was given to the wife, to convert it into a life interest, unless such disposing intention in their favor is manifest from the words employed. If there is nothing to control the use of the property in the hands of the first taker, and he may appropriate it exclusively to his own purposes, there will be wanting that certainty which is necessary to give effect to the recommendation as a trust.

It is not urged that the will under which the appellant claims uses any mandatory words in any way limiting the absolute right of the widow to the real estate devised. It is contended, however, that the precatory expression by the testator of confidence in her judicious use of it, for the benefit of herself and children, creates such a trust as must entirely destroy the exclusive interest, which, without these superadded words, she would take in the property. It will be observed that there is no direct gift to the children, on whose behalf the trust is sought to be established by the respondent, to shield him from the relief claimed by the complaint, nor are there any words interposed directory to the wife, either as to the mode of her use of it, or at all indicating how or to what extent the children should have its enjoyment. Indeed, such appears to have been his confidence in her affection and judgment, that, though having his children at the time in his mind, instead of conferring on them any express or definite interest in his estate, he prefers to give her the unrestricted power over his whole property, in the confident belief that it would thereby be the more advantageously used for their benefit.

Is this confidence, thus reposed in his wife, which was the declared inducement to the disposition in her favor, to be controlled, unless a clear trust, which would be inconsistent with the right so plainly first conferred upon her, is shown to have been intended by the superadded words? He has, in the most solemn instrument a man

can execute, testified to the confidence which he had in her, and no authority has been produced to the Court which could justify it in annexing terms or qualifications which would declare that he did not intend what he said. The manner in which she might use the property was to be in entire accord with her judgment. There is no control as to the mode in which she should employ it. Its use was to be subject to her own determination. For aught that appears, she could not better exercise the discretion with which she is invested than by a sale of these very premises. Their conversion into money may be the most judicious use which she can make of them, and may fully justify the confidence which her husband had in her when he constituted her his sole devisee and legatee.

We are not disposed to extend the rule which the Courts have adopted in regard to the force and effect of devises created by mere words of recommendation. More especially should it be narrowed to the limits prescribed by the authority of decided cases, where there is no mode of ascertaining, as is the one before us, to what extent the trust is to operate. The vagueness in the direction as to the proportions which the supposed beneficiaries shall enjoy, where the benefit may be claimed by more than one, and the want of description of the manner in which the trust is to be executed, may well be urged against its existence. As observed by Mr. Lewin, in his treatise on Trusts and Trustees, 169, " the difficulty that would attend the execution of such imperfect trusts is converted by the Court into an argument that no trust was really intended. Nor will the devise be construed into a trust if it appears, from the context, that the first taker was to have a discretionary power to withdraw any part of the subject from the object of the wish or request."—*Knight* vs. *Knight*, 3 Beav., 174.

The words of the will here are not as strong in favor of the children as those in *Pope* vs. *Pope*, 10 Sim., 1, where the testator, after " trusting that his wife will, from the love she bears him and their dear children, so husband and take care of what property there may be, for their good, and, should she marry again, then she may convey to trustees, in the most secure manner possible, what property she may then possess, for the benefit of the children, as they may severally need or deserve, taking justice and affection for her guide." It was held that no trust was created in favor of the children, and so we are bound to hold here.

There is no branch of equity jurisdiction in which the Court is

allowed the greater exercise of a sound and reasonable discretion, " which governs itself, as far as it may be, by general rules and principles," than that which relates to the specific performance of agreements. As was said by Lord Eldon, in *Radcliffe* vs. *Waining-ton*, 12 Ves., 331, " the jurisdiction is not compulsory upon the Court, but the subject of discretion. The question is not what the Court must do, but what it may do, under the circumstances."

" Time is not generally deemed, in equity, to be of the essence of the contract, unless the parties have expressly so treated it, or it necessarily follows, from the nature and circumstances of the contract."—Story's Eq. Juris., § 776.

The aim of the Court is to ascertain the real intention of the parties, from an examination of all the circumstances attending the contract, and to give effect to such intention, when discovered. After an examination of all the cases brought before him on the argument of *Upwell* vs. *Knight*, 1 Y. and C. Excheq., 415, (note to § 776, Story Eq. Juris.,) Mr. Baron Alderson lays down what he regards the governing principle: "It is to examine the contract, not merely as a Court of law does, to ascertain what the parties have in terms expressed to be the contract, but what is, in truth, the real intentions of the parties, and to carry them into effect." The effect of time, in regard to the specific performance of agreements, is considered and discussed in *Thompson* vs. *Dulles*, 5 Rich. Eq., 370, where, although a space of eighteen months had elapsed between the contract for the sale and institution of proceedings, and the title was not perfected until nearly two years thereafter, it was held that the delay on the part of the plaintiff did not amount to such laches as deprived him of his right to a specific performance.

The agreement in the case before us was made on 1st March, 1873—one-third of the purchase money, to wit, two thousand dollars, was to be paid in cash, the balance in one and two years, interest from date—the terms to be complied with " whenever clear and unencumbered titles are given." The only incumbrance on the property was a mortgage, on which, as appears by the decree, was due a balance of $2,000, with interest from March, 1873. It is unnecessary to recite the correspondence which followed the tender of title, on 29th April, 1873, by the plaintiff, to the attorney of the defendant, with the offer to satisfy the mortgage, and apply to it the cash portion to be paid by the vendee. It is enough to say that the offer to make the application, as proposed, was a reasonable one,

often adopted, under the like circumstances, by both parties, when they are really desirous of executing their contract according to its true intent. On 30th April following the respondent, by his attorney, replies "that a clear and unencumbered title not having been tendered, the purchase is declined." The instantaneous rejection of the purchase evinces an anxiety on the part of the respondent to free himself from a contract, which he may have repented, by eagerly availing himself of what he may have considered an opportunity of avoiding it. But this was not all. On the 17th May succeeding the appellant, in writing, informed the respondent "that she proposed to extinguish the mortgage, if he would then accept her conveyance and settle for the purchase." Two days after a reply was received, to the effect that, when the title was reported to him as not good, he requested her agent (with whom he treated for the purchase) to cancel the agreement, as he desired to use his funds and look for other investments, which he had found.

On 31st January, 1874, an order was made, referring the case to a Referee, to take the testimony, the respondent's counsel refusing to consent to an order for a reference on the title. To this either party was entitled at any time before a hearing, and, under some circumstances, after the hearing and before decree. The refusal, on the part of the Judge, to entertain the motion for such a reference was clearly erroneous. After the hearing, and before decree, the appellant moved the Court, if it should be of opinion that all that she had already done was not a sufficient compliance with her agreement of sale, that leave be granted her to pay into Court a sum sufficient to meet the full amount due on the mortgage—the application to its satisfaction to be made by the Clerk. This was resisted and refused.

While every attempt was made to remove the objection interposed by the respondent, he has not shown how, or in what way, the delay in perfecting the title has enured to his prejudice, or why he at first declined the offer of the cash payment to the discharge of the mortgage.

It is clear, beyond doubt, that if the party, though not able to make a good title at the time of bringing his bill, is in a condition to do it before the decree, he should be so permitted.—Story's Eq. Juris., § 77; *Morlback* vs. *Butler*, 10 Ves., 314; *Langford* vs. *Pitt*, 2 P. Wms., 630.

In 2 Daniels Ch. Pr., 634, it is said: "And, even after the report,

if the vendor can satisfy the Court that he can make a good title, by clearing up the objection reported by the Master, the Court will make a decree in his favor." There are cases, too, to show that if the vendor, at the hearing, seems to be in a condition to remove the obstacle in the way of his making a perfect title, and it so appears to the Court, he may have a decree, to take effect upon such removal.—*Langford* vs. *Pitt*, 2 P. Wms., 630 ; *Merchants' Bank* vs. *Thompson et al.*, 55 N. Y. R., 7.

Ch. Walworth, in *Bates* vs. *Lyons*, 7 Paige, 85, says: "It is not a matter of course, however, to dismiss a bill for specific performance merely because the title was not perfect at the commencement of the suit, although that may be a sufficient reason for giving costs to the defendant if he has not made any unreasonable objection to the title."

Much of the litigation in this case might probably have been saved if the usual and proper course of a reference on the title had been followed. The appellant might then have been allowed, before the report, to satisfy the mortgage, and thus clear her title of the only incumbrance which rested upon it. Censequences, involving delay, costs and other expenses, are apt to follow where the usual routine of practice is disregarded.

The objection that there may be creditors of the testator who may subject the said premises to the satisfaction of their demands, cannot prevail. If there are debts which can effect them, after what has been shown by the appellant to the contrary, the *onus* is on the respondent to disprove her averment. The testator died on 10th February, 1871. The Referee reports that she advertised, according to law, for creditors holding demands against the testator, to present attested statements thereof; that none were proved within the time prescribed by law, or subsequently; that the tender of title, on 29th April, 1873, was accompanied by her affidavit ; that she was sure there were no creditors, save those who had released to the respondent all the claims which they might, in any event, have against the said property, and the creditor holding· the mortgage, which was, in fact, the only incumbrance on it. Under the circumstances thus disclosed, can the respondent, with any reason, urge this further objection to the execution of his contract ?

The motion to reverse the judgment below is granted.

It is ordered that the case be remanded to the Circuit Court, and

on its appearing to its satisfaction that the mortgage lien has been removed, the respondent be required specifically to perform his agreement. As the time fixed for the payment of the first instalment has expired, and it appearing that since complaint and answer filed some arrangement has been made in regard to rent and taxes, to continue pending the action, an order may be required to further the purpose proposed through it by the parties. Such order may also be applied for to the Circuit Court, and any other necessary to give effect to the judgment of the Court herein pronounced.

*Wright*, A. J., and *Willard*, A. J., concurred.