## 17851

CITIZENS & SOUTHERN NATIONAL BANK OF SOUTH CAROLINA, Executor of the Estate of J. J. Roach, Respondent, v. Frank G. ROACH, Respondent, and J. F. Roach, Donald Everett Roach, R. Carlisle Dixon, Jobie J. Dixon, Leland W. Dixon, LeRoy A. Dixon, Irene D. McMillan, Frank M. Drake, Jr., Florence D. Roberts, Azilee D. Foy and Sarah Crouch Bruce, Appellants.

(122 S. E. (2d) 644)

*Messrs. J. Lewis Cromer* and *Harry M. Lightsey, Jr.,* of Columbia, *for Appellants,*

*Messrs. Townsend & Townsend,* of Columbia, *for Respondent, Frank G. Roach,*

*Messrs. Robinson, McFadden & Moore,* of Columbia, *for Respondent, The Citizens and Southern National Bank of South Carolina.*

November 15, 1961.

LEWIS, Justice.

This appeal concerns the proper construction to be placed upon item 3 of the will of J. J. Roach, deceased. The testator died on April 20, 1959 leaving of full force and effect his will dated April 2, 1951. In item 3 of his will he gave the sum of $18,000.00 to his foster son, T. J. Blakewood, under certain conditions, and then provided that "in case of the death of T. J. Blakewood, any amount left will be willed to Frank G. Roach, my brother". T. J. Blakewood predeceased the testator. In the administration of the estate of J. J. Roach question arose as to whether the quoted provision is effective as an alternate gift of the legacy of $18,000.00 to Frank G. Roach, or whether it indicates an intent on the part of the testator to make a subsequent testamentary disposition in the event T. J. Blakewood should predecease him. If the quoted provision is effective as an alternate gift to Frank G. Roach, then he will receive the entire legacy. If not, the legacy will pass to the heirs at law, as the will contained no residuary clause.

The lower Court held that the provisions of item 3 effectively designated Frank G. Roach as the beneficiary of the legacy on the death of Blakewood, and directed that it be paid to him. From that determination, the heirs at law have appealed.

The portions of the will relating to our inquiry here, including item 3 are as follows:

"3. Will to my foster son, T. J. Blakewood, Scotia, South Carolina and Columbia, South Carolina, $18,000.00; $18,-000.00 in trust for him, paying him $100.00 per month, unless he is sick and needs more then pay him $150.00 per month until he is well. Letter is attached signed by T. J. Blakewood, promising that he will never in his life marry a girl by the name of Annie G. Smith, Scotia, South Carolina, or Garnett, South Carolina. If he breaks his signed, attached, written agreement and contract he is not to receive one cent

of this amount: His part will then go to Frank G. Roach. When T. J. Blakewood reaches the age of 35 years, at which time the trust shall terminate, the entire balances on hand, principal and interest accumulation, shall be paid over to T. J. Blakewood, if he kept his signed, written agreement and contract attached. I want the Bank to go over all these matters with him. I want this set aside first for him out of the Estate. I want him to receive the whole amount of $18,-000.00. *In case of the death of T. J. Blakewood any amount left will be willed to Frank G. Roach, my brother.*

"4. I will to my brother, Frank G. Roach, $10,000.00, in trust for him, paying him $150.00 per month. In case of death of Frank G. Roach, any amount left will be willed to LeRoy Dixon, my nephew. I also want this set aside first for him out of the Estate.

"5. I will to Mrs. N. D. Blakewood $500.00, daughter Mrs. Thelma Blankenship $500.00, sister and mother of T. J. Blakewood. If T. J. Blakewood breaks his signed written agreement and contract attached they will not receive One Cent either and their amounts of $500.00 each will be willed to LeRoy Dixon. In case of their deaths this money goes to LeRoy Dixon.

"6. I will to Charles E. Steadman, Sr. $2,500.00, for his pleasure and personal needs, not to be spent on house. In case of his death this goes to his son Elliott and his wife.

"7. I will to Mr. and Mrs. LeRoy Dixon and son Julian $500.00 each. In case of the death of any one of these three the money is to go to either of the two remaining.

"8. I will to Mrs. C. E. Steadman $500.00 and son Elliott $500.00. In case of the death of either the portion assigned is to go to C. E. Steadman, Sr.

"9. I will to Johnnie Reynolds, Jr. $300.00, to his father, J. L. Reynolds $300.00, Wilson Reynolds $300.00, Columbia, South Carolina. In case of death of any one of these the money goes to either one of the two remaining.

"10. I will to . Benny Kissam, Waynesboro, Georgia, $300.00 In case of his death this goes to sister Mrs. Bill Evans.

"11. I will my automobile and personal property to T. J. Blakewood, under the above-mentioned conditions of the signed, attached, written agreement and contract of T. J. Blakewood. If he should break this above-referred-to agreement and contract, then this automobile and personal property is to go to Frank G. Roach, my brother."

There is no question in this case but that the testator intended to make a will. The question is, therefore, limited to a determination of the intent of the testator relative to the disposition of the legacy in item 3 at the death of T. J. Blakewood. What then did the testator mean by the use of the language "will be willed" in item 3 of the will? Did he intend to thereby designate Frank G. Roach as substitute legatee in the event of the death of the primary legatee, T. J. Blakewood, or did he merely express an intention to do so in some future instrument? To constitute a valid bequest to Frank G. Roach the language must have been used in a dispositive sense at the time of the execution of the will. If the provision refers to something which the testator intended to do in the future, as opposed to something then being done by him, it does not constitute a testamentary disposition. 94 C. J. S. Wills § 129, p. 903.

It is well settled that, in determining the meaning of words used in a will, the duty of the Court is to ascertain and effectuate the intention of the testator, unless that intention is in conflict with some settled rule of law or public policy. *Rogers v. Rogers,* 221 S. C. 360, 70 S. E. (2d) 637.

And, in deciding the issues, we must keep in mind that we are not here construing a will prepared by a skilled legal draftsman. Technical terms are not involved. Rather, the will is in the language of the layman.

The foregoing provisions of item 3 clearly show that the testator intended that Frank G. Roach, his brother, receive the legacy on the happening of either of two contingencies, namely, the marriage of the Smith girl by Blakewood, or Blakewood's death before he reached the age of thirty-five. Upon the happening of the first, the testator states that Blakewood's part "will then go to Frank G. Roach", admittedly, an effective disposition to Roach if such contingency had taken place. Upon the happening of the second, it is provided that "any amount left will be willed to Frank G. Roach, my brother". It is contended that, as to the second, the words "will be willed", were ineffective to dispose of the legacy without some further testamentary act on the part of the testator. Blakewood never married the Smith girl. He died in 1955, four years prior to the death of the testator in 1959. While the testator knew of the death of Blakewood, no further will was ever made by him. No reason appears, and none is suggested, for the testator to provide in item 3 for Roach to take under the will upon the happening of one contingency and, as to the other, leave the bequest of the fund to be taken care of in some future instrument. The only reasonable conclusion is that the testator intended to name Frank G. Roach as substitute legatee in either event.

The appellants argue that the language "will be willed" is "unambiguous language of futurity" and fails to show the requisite testamentary intent to constitute an effective disposition of the legacy. If the foregoing language is isolated from the other provisions of the will, the contention of appellants would probably be correct. However, in determining the meaning of words in a will, they must be construed in their context and not in isolation, apart from other portions of the will. As stated in the case of *Schultz v. Barr et al.,* 186 S. C. 498, 502, 196 S. E. 177, 179: "The meaning which the testator intended to convey, by the use of particular words and expressions, will be determined from their relationship to other words and ex-

pressions used, and, when his intention is discovered, it will be enforced, notwithstanding that a meaning broader or narrower than is usual be given to particular words and phrases."

When the language in question is construed in connection with other provisions of the will, the conclusion is inescapable that the only futurity which the testator could have reasonably contemplated was the future occurrence of the contingency upon which the alternate gift was to take effect, and not some future testamentary act.

The will contains fifteen bequests and in each instance the testator named a substitute legatee. This is the evident plan and scheme of the will. No bequest was made in which the testator did not attempt to provide for a substitute legatee in the event of the failure of the primary legatee to take. In doing so, he used the language "will be willed" in items 3, 4 and 5, and in the remainder of the will such terms as "shall be paid over", "will then go", "this money goes" and "is to go". If the language in question is to be given any effect and not treated as surplusage, it must be given the same effect as the foregoing expressions used in other items of the will. When given such effect it fits in perfectly with the evident plan of the testator of naming a substitute legatee wherever a bequest was made. There is nothing in the will or the surrounding circumstances to indicate a contrary intention. It is evident that the testator used the words "will be willed" in items 3, 4 and 5 as synonymous with such expressions as "will then go", "shall be paid over", etc., used in other portions of the will.

There is nothing to indicate that the testator intended the results which would have been contemplated by the adoption of the construction urged by appellants. Both items 3 and 11 contain gifts over to Frank G. Roach in the event Blakewood married the Smith girl. While the language used is different, there is nothing to justify the conclusion that, if Blakewood married the Smith girl, the testator desired that

Frank G. Roach get the legacy in item 11 but not the one mentioned in item 3. When we further examine items 3, 4 and 5 in the light of the construction urged by appellants, we find that an unreasonable situation would result. As stated by the lower Court, such a construction would result in the situation "that on Blakewood's marriage to the Smith girl, Roach could take as alternate legatee under item 3, but Dixon could not under item 5; whereas, on the death of the primary legatee, Roach could not take as substituted beneficiary under item 3, Dixon could not take under item 4, but Dixon could take under item 5". We find nothing in the will to justify the conclusion that such was the intent of the testator.

The construction adopted by the lower Court is the reasonable interpretation to be placed upon the will. It effectuates the evident intention of the testator and gives force and effect to every part of the instrument. We think the lower Court correctly interpreted the will.

The costs and expenses of this action will be paid by the executor.

Affirmed.

TAYLOR, C. J., and OXNER, LEGGE and MOSS, JJ., concur.