Fenn M. STARRATT, Plaintiff,

v.

Stanley F. MORSE et al., Defendants.

Civ. A. No. 70–233.

United States District Court,
D. South Carolina,
Charleston Division.

Oct. 15, 1971.

Legare, Hare & Smith, W. Turner Logan, Morris D. Rosen, Charleston, S. C., for plaintiff.

Brockinton & Brockinton, Charleston, S. C., for defendant Stanley F. Morse.

W. Brantley Harvey, Beaufort, S. C., for defendant Stanley F. Morse, Jr.

Thomas S. Tisdale, Charleston, S. C., for defendant The Protestant Episcopal Society.

## ORDER

SIMONS, District Judge.

This is an action to construe the Will, and the Codicils thereto, of Mrs. Elizabeth L. Morse, deceased, late of Charleston County, South Carolina. Plaintiff contends that because of an irreconcilable conflict between certain portions of the Will and the first Codicil attached thereto the testatrix revoked the former by necessary implication.[1]

The case was tried before me without a jury at Charleston, South Carolina on May 31, 1971, and June 1, 1971. I have carefully considered all of the testimony and evidence submitted, including a study of the various exhibits before the court, and in compliance with Rule 52(a) of the Federal Rules of Civil Procedure, I find the facts specially and state my conclusions of law as follows:

## FINDINGS OF FACT

1. Plaintiff is a citizen of Florida. Defendants are citizens of South Carolina and, at the commencement of this action, all defendants resided in the Charleston Division of the District of South Carolina. The matter in controversy exceeds the sum, or value, of Ten Thousand ($10,000.00) Dollars, exclusive of interest and costs.

2. The plaintiff, Fenn M. Starrett, is a daughter of Defendant Stanley F. Morse, Jr., and is a granddaughter of Defendant Stanley F. Morse, and of the

---

[1]. The provision in question contained in the first codicil, namely, paragraph Four, patently does not *expressly* revoke any part of the Will, and the court so finds as a fact.

testatrix, Elizabeth L. Morse. Plaintiff was born on August 5, 1942, and attained her majority on August 5, 1963. Plaintiff is the same person named and designated as Elizabeth Fenn Morse in the Will and Codicils hereinafter referred to.

3. The defendant, Stanley F. Morse, was born on September 15, 1884. He and the testatrix, Elizabeth L. Morse, were married on June 1, 1910, and the defendant, Stanley F. Morse, Jr., was the only child born of this marriage. Stanley F. Morse and his said wife resided together as man and wife until her death in Charleston, South Carolina, on January 31, 1962.

4. In 1955, the testatrix, Elizabeth L. Morse, became totally blind. At that time she and her husband resided together in their jointly owned house at Rockville on Wadmalaw Island, in Charleston County, South Carolina. Mrs. Morse had accumulated and owned numerous objet d'art, ornaments, antiques, paintings, pictures, family heirlooms, rings, brooches and other items of jewelry, silverware, china, furniture and other furnishings.

5. In 1958, Mr. and Mrs. Morse, Sr., came to the City of Charleston and consulted a prominent local attorney, the late Coming B. Gibbs, Esq., about a Will for Mrs. Morse. Mr. Gibbs prepared a Will for Mrs. Morse which she properly executed on July 29, 1958. This Will, which is now being attacked, directed that all debts, funeral expenses and State and Federal estate and succession taxes be paid out of testatrix's general estate. Thereafter, the testatrix's Will made numerous bequests of personalty and cash to various friends and other persons, including her husband, her son, her granddaughter, Elizabeth Fenn Morse, and other members of her family. The final paragraph of the Will dealt with the nomination, authority and duties of her Executors, Stanley F. Morse and Stanley F. Morse, Jr.

6. On July 27, 1959, approximately one year subsequent to the execution of her Will, the testatrix executed the first Codicil thereto in her home at Rockville, South Carolina. Because she was totally blind, testatrix's husband read her Will to her and she informed him what additions, changes or amendments she desired. Her husband prepared a handwritten Codicil which incorporated the above provisions and read them back to her. Upon her approval, he typed the Codicil in final form and, after reading the typed Codicil to her, she executed it properly in the presence of three subscribing witnesses.

7. Subsequently, on March 31, 1960, the blind testatrix executed a second Codicil to her Will in her home at Rockville, South Carolina. The circumstances surrounding the execution of this Codicil were substantially the same as above described as to the execution of the first Codicil.

8. Testatrix died on or about January 31, 1962, leaving in full force and effect the aforesaid Last Will and Testament, and the two foregoing Codicils thereto, which were admitted to probate in common form in the Probate Court for Charleston County on February 9, 1962. Stanley F. Morse, Jr., Testatrix's son who was named in the Will as Co-executor, declined to serve, and Testatrix's husband, Stanley F. Morse, qualified as sole Executor and administered the estate. Letters Dismissory were issued to him on January 6, 1965, and this suit was commenced in March 1970.

9. Paragraph Thirteenth of the Will reads as follows:

THIRTEENTH: I give and bequeath to my beloved husband, Stanley F. Morse, the net income for and during the term of his natural life from all the rest and residue of my property of whatsoever kind, real, personal and mixed, except the real estate as hereinafter provided for in Section (a) of this paragraph, of which I shall die seized and possessed, and which I may be entitled to dispose of wherever situate, whether acquired before or after the execution of this Will, including any and all lapsed legacies provided for in this Will.

Section (a) In the case of real estate owned by my husband and myself as tenants-in-common, I declare that one-half the cost has been paid for by my husband, Stanley F. Morse, out of his own funds and has been and is to be his absolutely and is not to be treated as part of my estate. The other half of this real estate is owned by me and shall be retained as a part of my estate for the use of my said husband during his lifetime except as provided as follows:—that at any time subsequent to my death my said husband may purchase my share of all such real estate at the total cost price or at the current market price, whichever may be the lesser; but should he at any time desire to sell such real estate he may do so at the best obtainable market price and reinvest my share in sound, good yielding securities to become part of the corpus of my estate. I further direct that any part of my said share of real estate which may be still a part of my estate at my husband's death shall become the property of my son, Stanley F. Morse, Jr., his heirs and assigns, absolutely and forever.

Section (b) I hereby direct that my husband, Stanley F. Morse, shall receive for his own personal use all net income, including dividends, all distributions by mutual funds, interest, proceeds from sale of rights and stock dividends and all other net income from my estate.

Section (c) I hereby direct and specify that the executors of my estate, even though they may be the Trust Department of a bank, shall maintain the investment of the assets of my estate (excepting real estate) in sound securities having a maximum yield and that in no case shall the executors of my estate be compelled to change the investment of the assets of my estate from high-yielding common stocks, preferred stocks and bonds to low-yielding so-called "legal investments". The mere fact that the Trust Department of a bank might happen to become the executor of my estate shall be no reason for changing the investment of my estate to so-called "legals" even though the rules of the bank may call for this type of investment; my executors shall distribute to my said husband, Stanley F. Morse, all of the net income from the said trust estate not less often than quarter-annually.

Section (d) Upon the death of my said husband, Stanley F. Morse, one-half of my said residuary estate shall go to, be vested in, and pass to such person or persons, in such manner and in such proportions, as may be appointed and provided for by my said husband, Stanley F. Morse, by and in his Last Will and Testament, with my said husband to have the full and uncontrolled right, power and authority, during his lifetime, in his uncontrolled discretion to invade and use for himself, all or any part or parts of said one-half of my said residuary estate; if my said husband should predecease me, then this one-half part of my residuary estate shall go and be disposed of as is hereinafter next provided in Section (e) of this Paragraph Thirteenth.

Section (e) Upon the death of my said husband, the other one-half part of my residuary estate shall go to and be vested in my son, Stanley F. Morse, Jr., to be his absolutely, with the exception of the sum of Two Thousand ($2,000.00) Dollars to be given to the Endowment Fund of The Protestant Episcopal Society for the Advancement of Christianity in South Carolina in memory of (or honoring) the Right Reverend Albert S. Thomas, retired Bishop of South Carolina, as a gift from Stanley F. and Elizabeth L. Morse, and excepting also the bequest of Ten Thousand ($10,000.00) Dollars to be paid to my granddaughter, Elizabeth Fenn Morse, upon the death of my said husband, as provided in Paragraph Sixth; in the event that my said son shall predecease my said husband, then at the death of my husband,

I will, devise and bequeath the one-half part of my residuary estate herein provided for my said son, to my natural grandchild or grandchildren, in equal shares, should there be more than one such natural grandchild; and in the event that all my natural grandchildren shall predecease my said son and not take under this my Will, then I will, devise and bequeath said one-half part of my residuary estate to the Wycliffe Bible Translators, Inc., presently of Glendale, California.

10. By her first Codicil, consisting of one typewritten page with five paragraphs, the testatrix made a number of additional bequests of cash and of designated personalty or chattels to various legatees. By paragraph Five she expressly revoked certain specific bequests previously made in paragraphs Fifth and Sixth of her Will and directed that certain specified "changes" be made in lieu thereof. Paragraph Four of the first Codicil consists of a single sentence and reads as follows:

"FOUR: I direct that my granddaughter, Elizabeth Fenn Morse, shall be my sole residuary legatee."

11. I find from the Will and first Codicil that the testatrix did not specifically bequeath all of her personal property in her Will, namely, her "portraits, pictures and ornaments," and by paragraph Three of the first Codicil these items were bequeathed upon the death of testatrix's husband, to her granddaughter, the Plaintiff. The testatrix then inserted paragraph Four to catch any other overlooked personalty, so that she would not die intestate as to such undisposed items and to give them to said granddaughter.

12. By paragraph One of testatrix's second Codicil she "increased" a gift of $5,000 made to her son in paragraph Third of her Will to $10,000 by expressly directing such "change" in said paragraph and bequest. By paragraph Five of the second Codicil, the testatrix revoked the provisions of Section (a) of paragraph Thirteenth of the Will by expressly deleting and changing the same so as to devise her realty to her husband absolutely in fee simple in lieu of the life estate previously given him therein. Similarly, by paragraphs Three, Four and Six of the second Codicil, the testatrix revoked and changed other bequests of certain described jewelry and chattels made in paragraphs Sixth and Seventh of the Will and in paragraph Two of the first Codicil by expressly deleting or changing the legacies therein. Neither Codicil, however, made any change in the two Executors nominated and appointed by paragraph Fourteenth of the Will.

13. The assets of the testatrix's estate included stocks and securities valued at $125,304.28, at the time of her death. During the course of administrating the estate and after payment of decedent's debts, taxes and costs, the Defendant, Stanley F. Morse, divided the securities into two equal parts and has managed same pursuant to paragraph Thirteenth of the Will.

14. Plaintiff contends that paragraph Four of the first Codicil is so wholly inconsistent with the language of Sections (d) and (e) of paragraph Thirteenth of the Will as to legally revoke and vitiate by necessary implication the provisions of the sections in their entirety.

15. In considering all of the provisions of the Will and the two Codicils it is evident from paragraph Sixth of the Will and paragraph Three of the first Codicil that the testatrix intended the plaintiff to receive the bulk of her jewelry, glass, china, silverware, furniture and furnishings, as well as her portraits, pictures and ornaments, the jewelry to be delivered to her on her twenty-first birthday; that upon the death of testatrix's husband, she receive the balance of such items remaining in her estate; and that she also be paid a specific bequest of Ten Thousand ($10,000.00) Dollars. However, there is no express showing or indication either outside the Will and its Codicils or within

the four corners thereof, evincing any special motive, purpose or intent on the part of the testatrix that she also meant the plaintiff to take her entire residuary estate to the exclusion of her husband and her only son. In the absence of a manifest intention to the contrary, in construing a will, the law accords favor to those beneficiaries who are the natural objects of a testator's bounty.

■ 16. In paragraph *Thirteenth* of the Will, the testatrix divided her income producing estate into two halves, and in clear, precise and unambiguous language she provided that Stanley F. Morse, her husband, enjoy the following rights: (1) the net income from the entire corpus of her estate during his lifetime; (2) the unrestricted right to invade and use as he desired one-half of the corpus of the estate; and (3) the unlimited power of appointment for such half of her estate to such person or persons as provided for in his Last Will and Testament. Plaintiff concedes that under the Will's paragraph Thirteenth, the testatrix's husband is entitled to the net income from the securities which formed the residue of her estate during his natural life. However, the residue of her estate was burdened not only with the husband's life estate, but also with the husband's power to invade and dispose of one-half of the corpus. Neither of the Codicils contain any reference to the husband's life estate, nor to his power to invade and dispose of one-half of the corpus, nor any express reference to Section (d) of paragraph *Thirteenth* of the Will. It is significant that in every instance in the Codicils where the testatrix "revoked" or "deleted" or "eliminated" or otherwise "changed" any gift, legacy, bequest or provision of her Will she made direct reference to the paragraph, section, subsection, or even line or word involved. It is thus quite clear that the testatrix knew how to revoke any gift or provision in her Will. A codicil will not be allowed to vary or revoke a will unless it is the clear intention of the testator to do so. Thus, considering the Will as a whole, in conjunction with the two Codicils, I find that it was not the intention or purpose of the testatrix to revoke her husband's life estate in the corpus or his right and power to invade and dispose of one-half thereof.

■ 17. Also, in paragraph *Thirteenth* of the Will, the testatrix, in clear and unequivocal language, gave her son, Stanley F. Morse, Jr., a vested remainder in the other one-half of the residue of her estate, subject to his father's life estate therein and subject to divestment only if he predeceased his father. Again, there is no reference whatever in the Codicils to such life estate or to the remainder interest which vested in testatrix's son, or to Section (e) of paragraph *Thirteenth* of the Will. The law in South Carolina has long been established that where an estate is once given by words of clear and ascertained legal significance, it will neither be enlarged nor cut down by superadded words in the same or subsequent clauses of the will, unless they raise an irresistable inference that such was the intention of the testator. As stated by the South Carolina Supreme Court in Werber v. Moses, 117 S.C. 157, 108 S.E. 396:

> If the testator had intended to revoke by his codicil the estate in remainder devised in his will to the grandchildren, it would have been a simple matter to have said so.

Likewise, when the testatrix herein by paragraph Five of her Codicil changed the life estate in the realty which she had given her husband under Section (a) of paragraph *Thirteenth* of the Will by devising the same to him "absolutely and in fee simple," she referred directly to Section (a) of said paragraph, thus clearly and unmistakaby changing the estate previously devised therein. Under such circumstances, I conclude that it is, therefore, quite significant that there is no reference in either of the Codicils to Sections (d) and (e) of paragraph *Thirteenth* of the Will. Consequently I find that it was not the manifest intention of the testatrix to revoke Section (e) and the vested remainder

therein given to her son in the other half of the residue.

18. Similarly, in Section (e) of paragraph *Thirteenth* of the Will, the testatrix by clear and unequivocal language made a specific bequest of $2,000 to the Protestant Episcopal Society "as a gift," payable on the death of her husband, but expressly excepted the sum of $2,000 from her son's share of his one-half of her estate. She also expressly excepted the pecuniary bequest of $10,-000 to the plaintiff from her son's share. There is no reference whatever in the Codicils to either of these specific bequests, although there are numerous other provisions in both Codicils revoking and otherwise changing other bequests, by means of particular references to the paragraph, section or subsection, and bequest to be changed. In the absence of express language evincing an intention to revoke this $2,000 bequest to the church, I find that it was not the testatrix's intention to do so.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and of the subject matter of this action.

■■■ 2. Since jurisdiction of this court is based upon diversity of citizenship the substantive law of South Carolina is controlling of the issues raised herein. Generally, under South Carolina law, revocations of provisions of a Will by implication are not favored. If a Codicil can reasonably be reconciled with the Will, it will be presumed that the testator so intended, and the court will give effect to such intention. See Werber v. Moses, 117 S.C. 157, 108 S.E. 396 (1920) (and the cases cited therein). Only where the provisions in question are˙ "absolutely irreconcilable" will the latter prevail over the former, *Id.* at 166, 108 S.E. at 401, and this occurs when "the subsequent words * * * are at least as clear in expressing that [implied] intention as the words in which the interest is given." Johnson, Admr. v. Waldrop et al., S.C., 182 S.E.2d 730, 731 (1971), quoting with approval from Walker v. Alverson, 87 S.C. 55, 68 S.E. 966 (1910) and Schroder v. Antipas, 215 S.C. 552, 56 S.E.2d 354 (1949).

3. By considering the Will and the Codicils together it must be determined whether testatrix's disposition of the principal of the corpus in Sections (d) and (e) of paragraph *Thirteenth* of the Will is revoked by necessary implication, since such disposition was not expressly revoked by either Codicil. The husband's right and power under Section (d) to invade and appoint one-half of the corpus as an incident of his life estate was given by clear and unmistakable language. The power cannot be revoked except in express terms or by necessary implication. Anderson v. Butler, 31 S.C. 183, 9 S.E. 797.

■■■ The question before me resolves itself into a determination as to what meaning is to be given to the language of paragraph *Four* of the first Codicil to testatrix's Will, in which she names the plaintiff as her "sole residuary legatee." These " * * * word[s] should be construed in a sense which will accomplish and not defeat the purpose of the instrument in which it is used," Cannon v. Ballenger, 222 S.C. 39, 41, 71 S.E.2d 513, 515 (1952). In determining this purpose, the court "must keep in mind that * * * we are not here construing a will [—specifically, a codicil—] prepared by a skilled legal draftsman." Citizens and Southern National Bank of S. C. v. Roach, 239 S.C. 291, 294, 122 S.E.2d 644, 646 (1961).

As the South Carolina Supreme Court stated in Howze v. Barber, 29 S.C. 466, 7 S.E. 817, 819:

The rule, as we understand it, both of law and of common sense, is that, where an absolute and unqualified estate is first created in words which import absolute and uncontrollable ownership, words relied upon to show that the testator intended to cut down such an estate, or to affect it with any trust, must not only be mandatory, but must, in themselves, show

the manner in which they are to operate, so that the purpose of the testator may clearly appear, how or in what degree he intended to cut down the estate previously created, or what was the precise nature of the trust he intended to impress upon it. 2 Story, Eq.Jur. § 1069; 2 Pom.Eq.Jur. § 1014 et seq; Howard v. Carusi, 109 U.S. 725, 3 S.Ct. 575, 27 L.Ed. 1089; Lesesne v. Witte, 5 S.C. 450.

There is nothing in either Codicil which clearly indicates the testatrix's intention to revoke the estate given to her husband, or to cancel the powers vested in him to invade and use, and to dispose of, a one-half of her residuary estate, or to forfeit the tax benefit of the marital deduction in Section (d) of paragraph *Thirteenth* of the Will.

 4. Plaintiff's contention that the wording in the single sentence of paragraph *Four* amounts technically to a general revocatory residuary clause is an interpretation which would destroy the provisions of paragraph *Thirteenth* of the Will. However, the proper rule is that it is the duty of the court to construe the Will and the Codicils as a single and entire instrument as if they had been executed at the same time and to harmonize and give meaning to all parts thereof. The testatrix's purpose for the codicil may be found in the Codicil itself. Where reasonably possible, the court will reconcile two apparently inconsistent or repugnant provisions in order to carry out the testator's intentions as to the disposition of his estate, and in so doing will not disturb the first provision further than absolutely necessary in giving effect to the second. A codicil will not be allowed to vary the will unless such is the plain intent of the testator. Werber v. Moses, *supra*. A will is not to be deemed impli-

edly revoked by a codicil if the language of the codicil is capable of any other reasonable construction, or revocation of some provision of the will is not absolutely necessary.

5. After considering the Will as a whole, and the two Codicils thereto, including the circumstances surrounding their preparation and execution, it is concluded that paragraph *Four* of the first Codicil does not revoke by implication Sections (d) and (e) of paragraph *Thirteenth* of the Will. The court finds nothing, either outside the Will and its Codicils or within the four corners thereof, evincing any special motive, purpose, or intent on the part of the testatrix to effect such a revocation—that is, to have her granddaughter take her entire residuary estate to the exclusion of her husband and only son. If the testatrix had in fact intended such a change it is reasonable to assume that she would have so indicated, for in every instance in the Codicils where she "revoked," "deleted," "eliminated," or otherwise "changed" any gift, legacy, bequest or provision of her Will she made direct reference to the paragraph, section, subsection, or even line or word of her Will which she wanted to alter.

6. The court concludes that the testatrix intended that paragraph *Four* of the first Codicil be in effect a particular residuary clause designed to cover any overlooked personalty—personal property not specifically bequeathed in the Will or Codicils thereto—and pass the same to the plaintiff upon the death of testatrix's husband.[2] It appears that subsequent to the execution of her Will the testatrix realized that she had not made a bequest, or bequests, of all of her personal property therein, for in paragraph *Three* of the first Codicil she bequeathed to her granddaughter certain

---

2. "Obviously there can be but one general residue of a testator's estate; but it is competent for a will to contain both a particular residuary clause and a general residuary clause or a number of residuary clauses. Hence, where a will contains two or more clauses appar-

ently residuary in character, the court should ascertain whether or not one or more of them refers to a particular or limited residuum. * * *" 96 C.J.S. Wills § 798, p. 221 (footnotes omitted).

specified property not mentioned in her Will, namely, her "portraits, pictures and ornaments." Apparently thinking that there may be other particular items or objects overlooked by her in her blindness, and desiring that her granddaughter have them, the testatrix added paragraph *Four* to the first Codicil.

■ 7. The rule that a bequest or devise in terms sufficient to give property absolutely or in fee will not be deemed cut down by subsequent language which is less clear and distinct than that of the original gift is a very sound one. Wates v. Fairfield Forest Products Co., 210 S.C. 319, 42 S.E.2d 529; Schroder v. Antipas, 215 S.C. 552, 56 S.E.2d 354; Power v. Power, 219 S.C. 56, 64 S.E.2d 14.

In Black's Law dictionary, Fourth Edition, page 23, it is said "a devise of property 'absolutely' means without condition, exception, restriction, qualification or limitation, and creates a fee-simple estate" citing Fuller v. Missroom, 35 S.C. 314, 14 S.E. 714 and Johnson v. McIntosh, 8 Wheat. 543, 5 L.Ed. 681.

8. Also of significance is Section 19-221, Code of Laws of South Carolina for 1962 which provides in pertinent part as follows: "No wills or testaments in writing of any real or personal property shall be revocable but by some other will or codicil in writing or other writing declaring the same. * * *" There was nothing in the Will or Codicils declaring that Sections (d) and (e) of paragraph *Thirteenth* of the Will were being revoked. It is true under the statute that, if there is an irreconcilable conflict between the will and a codicil, the latter must prevail, but the court finds no irreconcilable conflict between the Will and Codicils in this case. It is reasonable to infer from all the circumstances appearing from the record that the testatrix intended the language in paragraph *Four* of the first Codicil to create a residuary beneficiary to receive any personal property not otherwise specifically bequeathed.

■ Although I have found that it was not testatrix's intent to revoke Sections (d) and (e) of paragraph *Thirteenth* of the Will by paragraph *Four* of the first Codicil, I also conclude that, even if it were her desire to do so, the wording she used was not legally sufficient to accomplish the revocation under Section 19-221, *supra*, for such Codicil neither declared that Sections (d) and (e) were revoked, nor did it create an irresistable inference that such was the unmistakable intention of the testatrix, who "could revoke it only by one of the methods prescribed in Section 19-221 of the 1952 Code." Madden v. Madden, 237 S.C. 629, 118 S.E.2d 443, 448.

■ 9. The burden of proving absolute and irreconcilable inconsistency between the will and a codicil alleged to have revoked the former or a part thereof is on the contestant who asserts the revocations. 57 A.J. (Wills) § 543. In this case the plaintiff has the burden of proof and has failed to establish it.

In the light of the foregoing findings and conclusions, it is therefore,

Ordered (1) that judgment be entered for defendants' and (2) that the injunction heretofore issued against the defendants, Stanley F. Morse and Stanley F. Morse, Jr., with respect to the securities passing under Elizabeth L. Morse's Will be, and the same is, hereby vacated. It is further

Ordered that each party shall pay his own costs.